BENJAMIN A. HOVERSON v. FRED K. HOVERSON.[1]

December 24, 1943.

No. 33,530.

See Hoverson v. Hoverson, 216 Minn. 228, 12 N. W. (2d) 501.

*C. J. Laurisch* and *Frank P. Heil,* for appellant.

*Carl W. Peterson* and *Schmitt, Johnson & Farrish,* for respondent.

JULIUS J. OLSON, JUSTICE.

This is a companion case to Hoverson v. Hoverson, 216 Minn. 228, 12 N. W. (2d) 501. The two cases were tried together below and are so submitted here, at least insofar as the printed record of some 300 pages goes. In addition, we have numerous exhibits and records involving some related subjects but not of controlling value in this case, which is one involving a guardian's account. We shall try to avoid a repetition of the facts already appearing in the Jeannette Hoverson case.

The situation of the parties to this litigation now is this: While

Fred K. Hoverson still remains the general guardian for Benjamin, he becomes, for the purposes of the cause on appeal, the defendant therein. In August 1941, while the partition suit was pending, Mr. C. J. Laurisch, acting in Benjamin's behalf, filed a petition in the probate court asking for the appointment of a special guardian for Benjamin, to the end that Fred's doings as guardian might be investigated; that he be required to render an account of his trust; and, finally, because it was considered necessary to protect Benjamin's interests in the partition suit, that such special guardian should act for him. Mr. Frank P. Heil was nominated such special guardian and was promptly appointed by the court. He entered an appearance in the partition suit and therein sought to establish the claims we have discussed and determined in that case. The probate court in the meantime issued an order to show cause why Fred should not file a final account of his guardianship. He did so. Mr. Heil as special guardian filed objections. An amended account was then filed, and after a full hearing thereon the amended account was allowed. Dissatisfied therewith, Heil then appealed to the district court, where the matter was heard anew. In that court he became the champion for Benjamin, the real plaintiff.

The district court made certain changes in the findings of the probate court and in its decision gave directions to that court in respect to what was further to be done. As amended therein, Fred's account as general guardian was settled. Heil's motion for amended findings or a new trial was denied, and he appeals.

In the court below the cause was entitled: "Frank P. Heil, Special Guardian for Benjamin A. Hoverson, Plaintiff-Appellant, vs. Fred K. Hoverson, General Guardian for Benjamin A. Hoverson, Defendant-Respondent." Since the cause is in fact that of the ward against Fred, we think the general rule in cases brought on behalf of a ward should apply. Therefore, the title should be: "Benjamin A. Hoverson, Incompetent, by Frank P. Heil, Special Guardian," etc. 3 Dunnell, Dig. & Supp. § 4125d. The clerk will make the suggested change.

Since the account goes back to 1920, it is natural that disputes in

connection with fact issues should arise. However, the findings of the court and the record upon which these are founded show a careful consideration of every item involved, so our problem has been much simplified. There remains for us only the determination of whether the findings find reasonable support in the evidence.

■ The original jurisdiction of the probate court in matters of this kind is exclusive. And that court, having appointed the guardian, is clearly the proper one to pass on his accounting. 3 Dunnell, Dig. & Supp. § 4117a, and cases under notes 88 and 89. That court in such proceedings applies equitable and not strictly legal principles. This involves not merely items of debit and credit, but also due consideration of the propriety of charges for services rendered, and the like. *Id.* § 4117b.

As stated in the companion case filed herewith, Maurice Hoverson was committed to the hospital for the insane in 1916. His brother Theodore was appointed his guardian in January 1917 and continued to act in that capacity until his death in December 1923. The sister Jeannette succeeded him as guardian and later was appointed administratrix of his estate. On May 29, 1924, she filed her final account as administratrix, in which she included an accounting in the guardianship. The records do not disclose that the probate court has passed upon this account. From the records, however, it appears that Theodore, as guardian, filed an inventory and appraisement showing that he had received, as such, personal property of the appraised value of $4,257.72, of which $928.72 represented "cash in bank." The rest of the personal property consisted of horses, hogs, livestock, some unsold crops, as well as farm machinery and equipment.

As long as Maurice was in charge and until his commitment, he paid rent for the use of the real estate. After being committed to the State Hospital for the Insane at St. Peter, Benjamin continued in charge of the premises, took possession of Maurice's personal property, and proceeded with the farming operations much the same as Maurice. When Fred was appointed Benjamin's guardian in 1920, he and Theodore got together for the purpose of straight-

ening out the past commitments and liabilities between the two brothers whom they represented as guardians. The present controversy has for its root the propriety and accuracy of this adjustment.

A guardian is a fiduciary, and, as an officer of the court appointing him, he is subject to the orders and directions of that court. 3 Dunnell, Dig. & Supp. § 4098, and cases under note 73. Generally speaking, his standard of conduct may be summarized thus:

"In the discharge of his duties a guardian is bound to exercise reasonable care and diligence, in other words, such care and diligence as persons of ordinary care and diligence usually exercise in their own affairs of a like nature and under similar circumstances." *Id.* § 4107a and cases under note 21.

A guardian has no title to or personal interest in his ward's property. His authority to deal with it is limited to his capacity as a fiduciary. His possession is for the limited purpose of executing his trust, which clearly must be for the benefit of his ward. *Id.* § 4107f, and cases cited under notes.

With these general principles to guide us, we approach the question originally stated: Does the record sustain the trial court's findings settling and allowing Fred's account as general guardian?

There are many items involved, but the two controlling ones relates to the settlement made between the two guardians in 1920.

The personal property left on the farm by Maurice was duly inventoried and appraised. The appraisers were men of competence. That Benjamin appropriated and has ever since made use of all that property as his own is abundantly established by the record. In this adjustment, due allowance and credit were given Benjamin for his share of rentals as one of the owners of the land and for work he had done for his insane brother prior to the latter's commitment. The net result was a charge against Benjamin for $3,-398.08. This amount was duly paid by Fred as guardian for Benjamin to Theodore as guardian for Maurice.

The next item to be considered is the value of the use of the real property up to the time of settlement, dating from the time of Maurice's commitment until the settlement was made in 1920. The court found that Fred "as guardian adjusted the rental account * * * for the years 1917 through 1920 inclusive, with due allowance made to his ward for the share thereof," for "$4,759.43," which amount Fred paid "in full settlement * * * for said period of time." As to the livestock, machinery, and other property belonging to Maurice and appropriated by Benjamin, the court found its reasonable worth to be $3,398.08. Both items were approved and allowed as appropriate credits in Fred's guardianship account. The amount of money reaching Fred's hands as guardian for Benjamin amounted to $8,204.82. Other credits as to which there can be no room for criticism (among these a judgment in favor of Mr. Laurisch against Benjamin) more than exhausted the guardian's funds. The court found and concluded that Fred had "fully accounted for all assets coming into his possession and all disbursements made by him on behalf of said ward," and had in fact "advanced $14.56 of his own money on behalf of said ward," all without "compensation for his services," or even a dollar to reimburse him "for his expenses therein."

A careful examination of the record leaves no doubt in our minds that the trial court's findings and conclusions are well supported by the evidence. When Benjamin appropriated Maurice's farm, equipment, livestock, etc., he was not handicapped by any guardianship, nor did any of the cotenants interfere with his possession and use of the farm. From 1917 to 1920, the interval between Maurice's commitment and the adjustment between the two guardians, farm income was high and land values rose to dizzy heights. Benjamin's duty to his cotenants under the statute (Minn. St. 1941, § 557.06 [Mason St. 1927, § 9579]), prevented him from "receiving more than his just proportion of the rents and profits" of the common property. He could have been held liable to them in a suit for an accounting of the income had they chosen so to proceed. His liability to his unfortunate brother Maurice for the

property taken likewise is clear. His mother was still living at the old farm home. She had the greatest direct interest, being the sole tenant for life of the statutory homestead and the fee owner of one-third of the other real estate. As to her interest and right to collect her portion of the income, there is no dispute. That obligation was met and maintained until her death in 1922. In the circumstances, the trial court was obviously justified in sustaining the settlement reached by the two guardians if the amount was just and reasonable. The court found that it was, and the evidence abundantly sustains that finding. Furthermore, the statute places upon a guardian the duty of paying the just and lawful debts of his ward. *Id.* § 525.56(2), (Mason St. 1940 Supp. § 8992-135[2]). Obedience to that duty, the obligation being just and lawful, cannot spell liability upon its performer.

■ . We are asked to consider this case as an "original proposition" and to disregard the findings of the trial court. Of course that cannot be done. We are sitting as a court of review, not as triers of issues of fact. Even if we were to accept plaintiff's invitation in this case, the record is such as unmistakably to lead to the same conclusion as that reached by both courts below, *i. e.*, that Fred has properly discharged his fiduciary obligations as general guardian and deserves commendation, not condemnation.

Affirmed.

Mr. Chief Justice Gallagher took no part in the consideration or decision of this case.