JEANNETTE T. HOVERSON AND OTHERS v. BENJAMIN A. HOVERSON AND OTHERS.
FRANK P. HEIL, APPELLANT.[1]

December 24, 1943.

No. 33,529.

[1]Reported in 12 N. W. (2d) 501.

*C. J. Laurisch* and *Frank P. Heil,* for appellant.

*Carl W. Peterson* and *Schmitt, Johnson & Farrish,* for respondents.

JULIUS J. OLSON, JUSTICE.

In this action for partition or sale under Minn. St. 1941, § 558.01 (Mason St. 1927, § 9524), plaintiffs prevailed. The only dissatisfied party is defendant Benjamin A. Hoverson, who appeals through his special guardian, Frank P. Heil, from an order denying his blended motion for amended findings or a new trial. Only that part of the order denying a new trial is properly here.

The property involved is a Blue Earth county farm of 320 acres owned and used as a unit over a period of more than half a century. As a matter of fact, the home quarter section (SW¼ of section 2, township 106, range 25) was acquired on November 25, 1865, by Thron Hoverson, the common ancestor through whom the principal parties to this action claim ownership interests. The patent was issued August 15, 1866. These events took place during the turbulent times of President Andrew Johnson's administration.

In 1878, Thron acquired an adjoining 80 acres to the south, and in 1889 another 80 to the west. Until his death, on December 20, 1903, this was the family home. Having died intestate, his wife and ten children became vested with his title to and interests in the property. Later, upon proceedings duly had in and by the probate court of Blue Earth county, a final decree was issued September 16, 1904, awarding to the widow a life estate in the home 80, with remainder over to the children in equal shares, and, as to the remaining real estate, an undivided one-third, the children taking the remaining two-thirds in equal shares.

During the time the estate was being probated, the sons Maurice and Benjamin operated the farm on a rental basis, having purchased the needed personal property and farm equipment from the administrator. Then some years later, about 1909, Benjamin sold his share of the personal property to his brother Maurice and left for Oklahoma. But he soon returned to the old home and thereafter assisted Maurice in the farming operations until 1916, when Maurice was adjudged insane and committed to the State Hospital for the Insane at St. Peter, where he still remains. Benjamin continued in possession of the place with his mother and a sister. In 1920, the mother having become ill and being in need of more available medical attention, the son Fred and the daughter Jeannette acquired a home in North Mankato for her, and there the mother and Rachel resided until the mother's death in 1922.

Benjamin was adjudged incompetent in 1920 and his brother Fred appointed his general guardian. The guardian's final account is the subject matter of the companion case, Hoverson v. Hoverson, 216 Minn. 237, 12 N. W. (2d) 497, and will be discussed and disposed of in a separate opinion.

Benjamin's guardianship was, however, more formal than real, for it clearly appears that ever since 1920 he has lived upon and operated the farm practically the same as he did theretofore. He made needed improvements, repaired the buildings from time to time, did some fencing and tiling, and also constructed some brooder houses and a corn crib. He paid the taxes in the name of

"T. Hoverson Estate." His sister Jeannette paid at least part of the taxes which he probably had overlooked. She also took care of and paid fire insurance premiums upon policies covering the buildings on the farm. Since his mother's death, Benjamin has paid no rent to anyone, nor has he accounted for the income, possibly upon the theory that he was holding the property adversely to the interests of the other owners, at least such is now his special guardian's claim.

Benjamin's answer contains much irrelevant and immaterial matter. However, the trial court soon discovered what the real issues were and held counsel to the following: (1) Benjamin's claim of adverse possession; and (2) his claim for services, improvements, taxes, and the like, if adverse possession was not established.

Of the ten children surviving the father, only four remain, plaintiffs Jeannette, Fred, the insane Maurice, and defendant Benjamin. As to 240 acres of the land involved, there are 15 ownership interests, ranging from Benjamin's 138/310 (the largest) to the 19/1620's owned by certain grandchildren. As to the remaining 80 acres (the statutory homestead), we find the same number of owners, their interests varying from 3/20 to 1/40. There is no dispute about these interests unless eliminated by adverse possession or encumbered by Benjamin's claims for reimbursement and compensation. The title is otherwise clear.

There was a lengthy trial, at the conclusion of which the court found (1) that plaintiffs and defendants are tenants in common of the premises involved; (2) that Benjamin's occupancy during all these years was that of a cotenant and that such occupancy was not adverse but permissive; (3) that the repairs, improvements, taxes, and other expenditures made by Benjamin were but a partial consideration for the use and income of the property, and for that reason he was not entitled to any allowance therefor; and (4) that partition could not be had without prejudice to all the parties interested; hence that the land should be sold and the proceeds divided as provided by the cited statute.

■ First to be considered and determined is whether Benjamin's claim of title by adverse possession has been so firmly proved as to require a holding here, as a matter of law, that such fact was established. The question, of course, was one of fact initially to be determined by the trial court. It is equally clear that upon Benjamin rested the burden of providing the required proof, as stated in St. P. & D. R. Co. v. City of Duluth, 73 Minn. 270, 276, 76 N. W. 35, 36, 43 L. R. A. 433, 434:

"* * * Evidence of adverse possession is to be construed strictly, and is not to be made out by inference or presumption, but by clear and positive proof. The burden of proving the essential facts which create title by prescription rests upon him who asserts it."

■ In its inception, the relation between the heirs of Hoverson in respect to this property was one of cotenancy. To establish title by adverse possession by one such cotenant against his cotenants, the rule our cases have formulated and applied is well stated in 1 Dunnell, Dig. § 114(d):

"The entry and possession of one tenant in common is regarded in law as the entry and possession of all the cotenants and not as a disseizin. Such possession is not adverse until there is an ouster. To constitute an ouster between cotenants there must be overt and unequivocal acts of exclusive ownership or a clear and explicit assertion of adverse right brought home to the knowledge of the other cotenants."

The supporting cases are found in note 25.

■ Our cases uniformly hold that the relationship between cotenants is "confidential and fiduciary" and as such imposes "on each a duty to sustain, or at least not to assail, the common interest." 6 Dunnell, Dig. & Supp. § 9598. Thus, in Oliver v. Hedderly, 32 Minn. 455, 456, 21 N. W. 478, we said:

"* * * Cotenancy created by descent from a common ancestor does not come within any recognized exception to the rule that the relation is confidential in its nature, raising an obligation on the

part of each cotenant to sustain, or at any rate not to assail, the common interest."

We have reiterated that pronouncement in numerous cases since. Slagle v. Slagle, 187 Minn. 1, 5, 244 N. W. 79, 80, cites many of our prior cases, and we there repeated what had previously been said, that "There is a fiduciary relation between cotenants." Other jurisdictions are in accord. In 1 Am. Jur., Adverse Possession, p. 821, § 51, the author says:

"* * * The presumption is strongly against every claim by a cotenant by which he seeks to convert the circumstance of an apparently individual possession into an advantage over his associates."

Supporting cases are found in note 10. In 7 R. C. L. p. 847, § 41, it is said that, "in the absence of facts showing that a cotenant in sole possession holds such possession in opposition to the rights in his cotenants, his occupancy will be presumed to be that of a tenant in common, recognizing the cotenancy"; and the text writer goes on to say that the reason for the rule is that "greed shall not fatten under the guise of a greater vigilance." Supporting cases are found in note 12.

In this case Benjamin has done nothing to put his cotenants on notice that he was claiming adversely to their interests. True, he has remained in full possession of the property ever since his mother was taken to Mankato in 1920 and has accounted to no one for the income or profits. But there was nothing in these circumstances inherently hostile to the former family ownership and relationship; nothing to indicate hostility to or an assertion of adverse claims against his own brothers and sisters and the children of those who have died. His special guardian should not be permitted now to say that this hard-working old bachelor ever intended to oust anybody from his rightful share of the family heritage. And Benjamin's testimony bears this out, for he repeatedly said he only wanted what was his. Also, it is interesting to note that he makes no claim of adverse title as against his insane brother, who,

before being sent to the asylum, had acquired a greater interest in the property than anyone except Benjamin. In the 240-acre tract not included in the homestead we find that Maurice has record title to an undivided 300/810 (in round numbers, 3/8) ; Benjamin's interest is 138/310 (in round numbers, 7/16).

From its inception, Benjamin's possession was permissive, and the controlling rule in such situation is stated in State, by Attorney General, v. Riley, 213 Minn. 448, 452, 7 N. W. (2d) 770, 772, 773, as follows:

"* * * When the inception of the possession is permissive and not hostile or under claim or color of right, it is presumed to so continue and does not ripen into title however long it may continue, unless circumstances or declarations indicate an intent hostile to the true owner." (Citing cases.)

Upon the facts related, we think the trial court correctly held that title by adverse possession had not been established. As a matter of fact, if the findings had been the other way, it would be difficult indeed to sustain them. In reaching this conclusion we have not overlooked Benjamin's testimony that when his mother was leaving the old farm home for North Mankato she handed him the key, saying in substance that the property was now his. Even if this testimony were admissible against her interests, we cannot lose sight of the fact that she had but a life estate in the statutory homestead and as such could not "impair the rights secured to the children" by the statute of descent. She "could make such disposition" of her "life term" as she "saw fit," but "could not * * * subject the fee which had vested in the children to any burdens whatever." Nordlund v. Dahlgren, 130 Minn. 462, 467, 153 N. W. 876, 878, Ann. Cas. 1917B, 941.

The next question is whether the court erred in denying Benjamin's claim for asserted improvements, repairs, taxes paid, and personal services rendered during the time of his occupancy.

His counsel have found difficulty in switching his contentions from those so stoutly urged under his principal claim, that of title

by adverse possession. Under the former, he had to claim, as he did, that he held the property adversely to his cotenants and as such excluded them from possession. Now, as a cotenant, he asserts that he has not excluded the others from possession, and that therefore the income from the crops raised belong to him without liability to share with the rest, citing in support thereof (Appellant's Brief, pp. 15, 16, in Hoverson v. Hoverson [No. 33,530] 216 Minn. 237, 12 N. W. [2d] 497), Minn. St. 1941, § 559.05 (Mason St. 1927, § 9560); Arnold v. De Booy, 161 Minn. 255, 201 N. W. 437, 39 A. L. R. 403; and Sons v. Sons, 151 Minn. 360, 186 N. W. 811. While asking reimbursement for these various expenditures (taxes paid, improvements, repairs, personal services and the like furnished), he has made no showing of, in fact has refused to disclose, what the income and profits from the land were during his long period of exclusive occupancy. There is simply a total denial of any duty to account to his cotenants. If he is to prevail on any theory it must be that of contribution as a cotenant. That is the only peg upon which he may hope to hang any right of recovery. Assuming that theory to be tenable, he is faced with the rule that equitable considerations come into full play, since contribution is a creature of equity. Kirsch v. Scandia American Bank, 160 Minn. 269, 199 N. W. 881, furnishes the solution to this problem. There, as here, plaintiff was in possession of a farm and, as such, managed it and received the rents and profits, and these were in excess of the cost of the improvements made and taxes paid. We there held (that was also an action in partition) that it became the duty of the occupant first to apply the profits and income toward meeting these items, and that only as to any balance remaining was there any right of contribution, the opinion stating (160 Minn. 273, 199 N. W. 882):

"* * * Whatever the arrangement was the plaintiff was in possession receiving profits. He could not have sole possession and receive the profits without applying them so far as they would go in the payment of necessary improvements, taxes, and interest on

the first mortgage, while asserting a right of contribution for such items." (Citing many cases.)

And that is the exact situation confronting Benjamin in this case. Concededly, he was and still is in exclusive possession. For a period of nearly a quarter of a century, while in such possession, he has appropriated all income to his own use. That the value of the use of the property far exceeds the expenditures made and the services rendered, including taxes and repairs, cannot successfully be denied.

It is provided by Minn. St. 1941, § 557.06 (Mason St. 1927, § 9579): "One joint tenant * * * may maintain an action against his cotenant for receiving more than his just proportion of the rents and profits of the estate owned by them as * * * tenants in common." Numerous cases wherein the statute has been applied under various circumstances are cited under the section in Mason's Statutes, as well as in 6 Dunnell, Dig. § 9600, note 6.

■ Since contribution does not mature until the party owing a common liability has paid more than his just share of the obligation, Township of Canosia v. Township of Grand Lake, 80 Minn. 357, 83 N. W. 346, and since Benjamin has refused to disclose what his income was, he thereby necessarily failed to show that he has paid more than his just proportion; hence, his claim to contribution must fall.

Furthermore, the general rule seems to be that a tenant in common, absent agreement or understanding with his cotenant to that effect, may not make improvements upon common property at the expense, in any part, of his cotenant so as to enable him to recover any portion of the cost or value of the improvements. 6 Dunnell, Dig. § 9601, and cases in note 12. Whether this rule should be applied in this case we need not determine, since it is obvious that, for reasons already stated, Benjamin can have no recovery upon the basis here asserted.

■ We think, too, that the court properly and within sound judicial discretion determined that the property could not be divided without great harm and prejudice to all the parties to the cause.

Bearing in mind that 15 different interests are involved, greatly varying in extent and value, division in kind is obviously impossible of attainment. This is not a case where owelty may be applied with safety to the interests of the owners. As we said in Hoerr v. Hoerr, 140 Minn. 223, 226, 229, 165 N. W. 472, 474, 167 N. W. 735:

"Owelty should be decreed with caution. It should not be decreed except when necessary to make an equitable and fair division. A sale on partition may offer the preferable method. Either method, unless wisely administered, may burden or sacrifice the share of a co-owner. The statute prefers a division in specie, and neither a burdening of one share with owelty or a sale of the whole should be permitted except when equitably necessary."

What has been said disposes of the case on its merits.

Order affirmed.

MR. CHIEF JUSTICE HENRY M. GALLAGHER took no part in the consideration or decision of this case.

