# ROBERT TOMASON v. REINHOLD WAGNER AND ANOTHER.[1]

March 18, 1949.

No. 34,841.

*Mangan & Wilhelm,* for appellants.

*O. K. Alger,* for respondent.

---

[1]Reported in 36 N. W. (2d) 587.

THOMAS GALLAGHER, JUSTICE.

Action to set aside a conveyance of a quarter section of land by defendant Reinhold Wagner to his brother, defendant William Wagner, on the ground that the same was fraudulently made to avoid a judgment obtained by plaintiff against Reinhold in another action.

The trial court made findings and conclusions in favor of plaintiff and directed that the conveyance be set aside as fraudulent. Defendants moved for amendment of the findings or for a new trial, and appealed from the order denying their motion and from the judgment subsequently entered.

On July 11, 1946, Robert Tomason, a minor, by W. L. Tomason, as father and natural guardian, brought suit against Reinhold for personal injuries sustained by Robert at the hands of such defendant. The injuries included the minor's loss of an eye as the result of being struck by a piece of glass hurled at him by Reinhold.

On July 16, 1946, a few days after the commencement of the personal injury action, defendants here were advised by their counsel that if a judgment against Reinhold were obtained therein plaintiff could levy on his record interest in the quarter section involved in the present proceedings.

Acting on advice of counsel, Reinhold, as grantor, thereupon made, executed, and delivered to defendant William Wagner, as grantee, a quitclaim deed conveying the following premises in Stevens county, to wit: An undivided one-half interest in the SE¼, section 31, township 124 north, range 42 west. It is admitted that no consideration for this transfer was paid at that time except the sum of one dollar. It is claimed, however, that Reinhold was then indebted to William for money previously given him by William over a period of years; for taxes and ditch liens paid on the land in question by William; and for board and lodging furnished him by William from 1936 to 1942; and that the conveyance was made for the purpose of satisfying such debts.

A judgment in the personal injury action in the sum of $5,047.33, in favor of plaintiff, was docketed against defendant Reinhold

126

Wagner on January 30, 1947. It is plaintiff's contention that the prior transfer of Reinhold's quarter section as above described was made without fair consideration and with intent to avoid the effect of his judgment.

In 1936, Reinhold had received some $1,350 from his father's estate. This money was used by him during that year for the purchase of the quarter section here involved. On June 3, 1936, with his knowledge and consent, title thereto was placed in his name and in the name of William Wagner as tenants in common. Since that time until the transfer here attacked, each retained an undivided one-half interest therein.

The evidence established that Reinhold is below average mentally. He is unable to perform anything but menial tasks and has little understanding about money or property. He disclosed that his brother William took care of all his business for many years because of his inability to look after his own affairs.

The evidence further disclosed that between June 3, 1936, and July 16, 1946, William alone looked after all business transactions with reference to the quarter section. He collected rents, sold crops and produce therefrom, and retained all income derived from the operation thereof. No record was kept as to which portion represented Reinhold's share. During this period, William paid all taxes and certain ditch liens on the property in the total sum of $2,247.21. From time to time during the ten-year period, he gave Reinhold in addition various sums of money, in all, he asserts, in excess of $3,000. No records were kept by either brother as to the exact amount or the dates of payment thereof. At no time prior to this action did William make any claim against his brother for any part of the money thus paid out.

Subsequent to 1936, William had permitted another brother, Charles, to work another farm owned by him. In connection therewith, Charles permitted Reinhold to live with him on the farm and furnished him room and board. At the trial, William claimed an offset against Reinhold for the latter's occupancy of this farm at the rate of $40 per month.

It is the contention of defendants that all of the foregoing created an indebtedness owed by Reinhold to William which provided adequate consideration for the transfer of the quarter section from Reinhold to William on July 16, 1946.

In its findings and conclusions, the trial court determined that the conveyance from Reinhold to William was made without fair consideration and with intent to hinder, delay, and defraud plaintiff.

On appeal, defendants assert (1) that the evidence clearly establishes a fair consideration for the conveyance; and (2) that the evidence does not sustain the trial court's finding that it was made with intent to hinder and defraud plaintiff. Accordingly, the only questions presented here are whether the evidence reasonably sustains the trial court's findings on such issues.

■ We are of the opinion that the evidence reasonably supports the trial court's findings and conclusions. M. S. A. 513.23 provides:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

"Fair consideration" is defined in § 513.22 as follows:

"Fair consideration is given for property, or obligation,

"(1) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(2) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

It is undisputed here that Reinhold was rendered insolvent by the conveyance. He had no property aside from his interest in such real estate. From all the evidence presented, the trial court might well conclude that the advances made by William were derived from Reinhold's share of the crops and income derived from the section.

Reinhold's cash alone paid for the original purchase of the entire quarter section. He had permitted William to receive an undivided one-half interest therein. William in turn, with Reinhold's help, had worked the farm and sold the produce thereof. At no time were there submitted in evidence any records or reports to establish the amount thereof or Reinhold's just share of the same. It would seem that the trial court was justified in arriving at the conclusion that, in the absence of such evidence, the money paid out by William for taxes, ditch liens, living expenses on behalf of Reinhold, and as advances to him were nothing more nor less than the latter's share of the income derived from the property or for work or services performed by Reinhold thereon.

In Hoverson v. Hoverson, 216 Minn. 228, 235, 12 N. W. (2d) 501, 505, this court stated:

"* * * While asking reimbursement for these various expenditures (taxes paid, improvements, repairs, personal services and the like furnished), he has made no showing of, in fact has refused to disclose, what the income and profits from the land were during his long period of exclusive occupancy. There is simply a total denial of any duty to account to his cotenants."

Based upon such authority, we must hold that the evidence reasonably sustains the trial court's determination of this issue.

■ With reference to William's claim of an indebtedness to him arising out of room and board furnished Reinhold by Charles, it is obvious that the evidence submitted in connection therewith would not sustain a finding contrary to that of the trial court with reference thereto. Any indebtedness of Reinhold for room and board furnished would be to Charles rather than to William. Charles' occupancy of William's farm under an arrangement whereby he worked the farm and took care of it for William would indicate that William looked solely to Charles for compensation for such use and occupancy and that Charles had more than paid his obligation in this respect. The evidence might also lead to the conclusion that the room and board furnished Reinhold by Charles was compensa-

tion for work performed on such farm by Reinhold during this period. In any event, we do not find in the record any evidence which would support a finding that by reason of this relationship an indebtedness was created owing from Reinhold to William.

■ From the evidence outlined hereinbefore, the trial court justifiably concluded that at the time of the conveyance on July 16, 1946, William was still indebted to Reinhold on the original investment, with interest thereon from June 3, 1936; that no indebtedness was due and owing from Reinhold to William at that time; and, the only consideration paid at that time being the sum of one dollar, that the conveyance was without fair consideration and hence fraudulent as to plaintiff under the statutes above referred to.

Affirmed.