Michael N. ANDERSEN, Appellant (C8-85-282), Respondent (C1-85-754),

v.

Norman ANDERSEN, Respondent,

Hazel Andersen, Respondent (C8-85-282), Appellant (C1-85-754).

Nos. C1-85-754, C8-85-282.

Court of Appeals of Minnesota.

Nov. 12, 1985.

712

Robert H. Peahl, Faribault, for appellant (C8–85–282), respondent (C1–85–754).

David J. Rice, Rochester, for respondent.

Hazel Andersen, pro se.

Considered and decided by PARKER, P.J., and WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellants Michael N. Andersen and Hazel E. Andersen appeal from a judgment entered November 6, 1984, which the trial court attempted to amend on February 15, 1985, after this appeal was filed. The parties dispute the court's method of partitioning a jointly-owned farming operation and raise other issues such as unjust enrichment, tortious interference with contract relations, and general abuse of discretion.

We consolidated the appeals, and now affirm in part, reverse in part, and remand for entry of judgment partitioning the property.

## FACTS

Hazel, Norman and Michael Andersen[1] are joint owners of a farming operation near Rochester, Minnesota. This appeal follows a lawsuit resulting from the breakdown of that family farming operation. The problem among the parties brewed for a number of years and culminated when Norman moved from the farm in October 1980. Hostility among the parties is very evident.

Michael, Norman and Hazel purchased the farm in 1966. They intended that each of them would have an undivided one-third interest. The 270-acre farm cost $26,500 and was financed by a Federal Land Bank mortgage. There was conflicting testimony whether Michael paid his share of the mortgage and what constituted payments. Michael did not receive any of the farm income from 1966 to 1977.

In 1975, Hazel and Norman sold their home and moved in with Michael on farm property he owned individually. They lived with him for about two years during construction of a new home on the jointly-owned farm. This home was to be used as Norman and Hazel's homestead. The parties dispute whether Michael paid a proportionate share of construction costs. Norman testified he paid for most of the construction with proceeds from the sale of another home, a $10,000 inheritance from his mother, and current income.

Hazel and Norman entered into a contract for deed in 1977 selling an additional one-third undivided interest to Michael. As a result, Michael now owns an undivided two-thirds interest, subject to the contract payments. Since Hazel and Norman were subsequently divorced, they now each own an undivided one-sixth interest, and their interest as vendors under the Contract for Deed with Michael. There is no evidence of any agreement among the parties relating to rent, expenses, mortgage, or capital improvements.

Norman left the farm in 1980. Michael claimed that when Norman left the heating system was defective, and he spent $3,000 to replace it. In addition, he claimed to have spent $7,500 on landscaping, septic system repair, and other miscellaneous improvements. Norman testified that the house needed only routine maintenance when he left and that he gave Michael money to repair the heating system.

Michael says his parents are responsible for Federal Land Bank payments and all real estate taxes. Norman claims that Michael was to pay his proportionate share of the expenses and taxes. All parties shared equally in farm income between 1977 and 1980, but Michael claims the farm has been operating at a loss since then.

In 1982, Michael built a grain storage shed on the jointly-owned farm. He testified that economic conditions dictated he should store, rather than sell, the 1982 harvest. Norman told Michael he did not agree with the construction of the storage facility. Nevertheless, construction began on October 11, 1982 and stopped the next day after Norman talked to the excavating contractor. Excavation resumed on October 16. According to Norman, the shed was completed November 2, 1982. Michael

---

**1.** For clarity, the parties will be referred to by first names. Appellant Michael is the son of Norman and Hazel who were divorced in 1983. Hazel is also appealing based on a judgment entered against her.

claims it was not complete until November 15, 1982.

Michael argues that Norman's interference resulted in a $3,269 loss. Norman denies his interference caused any damage or delays, but that delays were usual and normal harvesting problems.

The parties also contradicted one another's testimony regarding Norman's counterclaim against Michael for conversion of personal property. Hazel and Michael assert gift, while Norman denies it.

Norman's cross-claim against Hazel concerns a 1983 contract for deed check from Michael payable to Hazel or Norman. Hazel cashed the check and put the proceeds in her savings account. She did not pay Norman one-half the sum as provided for in the divorce decree. She now appeals from the $3,171.70 judgment against her.

A bifurcated trial was held in June 1984. The first part determined that the value of the jointly-owned farm was $245,000 and that an undivided one-sixth interest is valued at $40,416. The parties waived a jury trial and the court tried the remaining issues June 13–18, 1984.

The court held: (1) that neither party proved entitlement to reimbursement from any other party; (2) Norman was not responsible for any improvements after October 4, 1980, including the storage shed; (3) the 1982 corn harvest was not delayed by Norman's actions in halting site preparation for the shed and construction was completed without his consent; (4) there was no specific agreement covering rent on the farm property; (5) the 1977 contract for deed obligates Michael to pay Norman and Hazel $3,500 per year, plus seven percent interest; (6) the divorce decree between Hazel and Norman requires the contract for deed payment to be split equally between them; (7) that Hazel owes Norman one-half the 1983 payment plus interest; (8) that the farm cannot be physically partitioned without detriment to each party.

The court also held that the items Norman claims Michael converted were either gifts to him or farm property acquired with farm proceeds. Therefore, Michael did not convert them to his own use and is not liable to Norman for damages. The court awarded Norman $40,416 for his one-sixth interest in the farm and $2,970.17 for his share of the 1984 contract for deed payment.

On December 13, 1984, the court heard post-trial motions. On February 4, 1985, while the motions were still under advisement, Michael filed a notice of appeal from the November 6, 1984 judgment. On February 15, 1985, the trial court issued amended findings, conclusions of law, order for judgment and judgment and decree which reduced Norman's award to $2,970.17 and ordered appraisal of the jointly-owned farm. The court denied the motion for a new trial and all other motions.

Hazel appealed from the amended judgment on April 22, 1985. On May 2, 1985 Michael appealed from the amended judgment, and on June 26, 1985 the Court of Appeals denied his motion to consolidate the two appeals. The appeals court dismissed the May 2 appeal, and consolidated Hazel's appeal with Michael's February 4 appeal.

## ISSUES

1. Did the trial court err in denying Michael's claim for contribution from Norman for expenses and improvements to jointly-owned property?

2. Did the trial court err in denying Michael's claim for interference with business relations?

3. Can the trial court issue a judgment ordering both money damages for a partial interest in realty and a partition by sale?

4. Is the post-appeal order of the trial court of any effect?

5. Is the judgment against Hazel Andersen supported by the evidence?

6. Does Hazel Andersen properly appeal from the motion in limine and partition of the farm?

## ANALYSIS

This dispute was tried by the court since the parties waived their right to a jury trial. "On review by an appellate court, 'a finding of the trial court is not to be disturbed unless clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law.'" *Cleys v. Cleys*, 363 N.W.2d 65, 69 (Minn.Ct.App.1985) (citations omitted).

In deciding this case, the trial court made detailed and specific findings. An explanatory memorandum also accompanied the findings. Minn.R.Civ.P. 52.01 provides:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

■ 1. Michael contends the court erred when it denied his claim for contribution from Norman for expenses and improvements to the jointly-owned property. He says the expenses were incurred after October 4, 1980, the date Norman left, for such items as landscaping, installation of a septic system, heating, and a grain storage facility. Norman claims that he is not required to share in the payment because he did not authorize the improvements.

Contribution is an equitable remedy and subject to equitable considerations. *Hoverson v. Hoverson*, 216 Minn. 228, 235, 12 N.W.2d 501, 505 (1943). There, a co-tenant farm manager was requesting contribution from another co-tenant. The supreme court held that, since plaintiff was in possession and managing the farm, profits must first be applied to improvements and taxes. *Id.* at 235, 12 N.W.2d at 505. Furthermore, contribution does not mature until the party owing a liability has paid for more than his fair share. *Id.* at 236, 12 N.W.2d at 506.

In this case, the trial court found that from 1977 to the present, Michael did not pay more than his share of the farm expenses and is not entitled to contribution from Norman. This court recently held:

In considering a claim for contribution the court should balance the benefits flowing to the party who occupied the property and received the rents and profits against the burden of paying the necessary taxes.

*Cleys*, 363 N.W.2d at 71. Clearly, Michael, as two-thirds owner of the farm, receives the greater benefit and should carry a greater burden than Norman, a one-sixth owner.

In addition, the general rule is that a tenant in common, absent agreement or understanding with a co-tenant, may not make improvements upon common property at the expense of his co-tenant so as to enable him to recover any portion of the cost or value of the improvements. *Hoverson*, 216 Minn. at 236, 12 N.W.2d at 506. When the rule is applied to this situation, it is clear that Michael is not entitled to recover.

There is no evidence of any agreement between Norman and Michael. In fact, Michael was aware that Norman disapproved of his building plans. All of the items for which appellant claims reimbursement can be classified as improvements and are governed by this rule.

The facts support the trial court's findings that the improvements were done without Norman's approval or consent. Thus, the trial court's failure to award contribution was not clearly erroneous and is supported by the evidence.

■ 2. Michael's next contention is that the trial court erred in denying his claims for tortious interference with contract. The trial court found that Norman's interference with construction of the grain storage facility did not unduly delay the grain harvest and that he was justified in his involvement.

Although there is no question that Norman disagreed with the location of the storage shed, there was conflicting testimony as to when the shed was complete and the reason for the delay. The trial court found that the third parties involved independently decided not to finish the work.

The claim for wrongful interference of contract is a tort action. *See Royal Realty Co. v. Levin,* 244 Minn. 288, 69 N.W.2d 667 (1955). The elements of this tort are: (1) existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Furley Sales and Associates, Inc. v. North American Automotive Warehouse, Inc.,* 325 N.W.2d 20, 25 (Minn.1982). The dispute here is focused on elements four and five.

The applicable standard for justification is found in *Potthoff v. Jefferson Lines, Inc.,* 363 N.W.2d 771 (Minn.Ct.App.1985), as "reasonable conduct under all the circumstances of the case." *Id.,* 363 N.W.2d at 776. Interference is not justified when it is done for the indirect purpose of injuring the plaintiff or benefitting the defendant, and the defendant has the burden of proving sufficient justification. *Furley,* 325 N.W.2d at 25.

The facts could reasonably lead to the conclusion that Norman was justified in discussing the shed with the contractors. The parties were already considering a partition, and Norman wanted a physical division awarding him the area around the old homesite, the site of the new storage shed. The court's findings support his contention that he was justified in his action.

■ The trial court further held that the damages Michael claims did not directly result from Norman's actions. The record shows that poor weather was largely responsible for the delay in the corn harvest. Therefore, there is sufficient evidentiary support for the court's conclusion that Norman was justified in the actions he took to stop construction of the storage shed and was not responsible for the harvesting delay.

3. Michael claims the trial court erred by ordering both money damages and a partition and sale for partial interest in realty. The November 6, 1984 judgment awards Norman $43,386.17; $40,416 for his interest in the property and $2,970.17 for his share of the 1984 contract for deed

payment. In addition, the court noted in its findings that the sale to Michael would be an alternative to a partition and sale pursuant to Minn.Stat. § 558 (1984). Although this procedure is not found in Minn. Stat. § 558, the parties initially agreed to set the value of the farm and permit Michael to purchase Norman's one-sixth share.

It is appropriate for a trial court to permit alternative methods in fashioning a remedy.

> Although the statutory procedure must be followed, once the court has taken jurisdiction of the case it may exercise its general equitable powers to effect the most advantageous plan which the particular nature of the case admits.

*Carlson v. Olson,* 256 N.W.2d 249, 255 (Minn.1977).

■ In light of this decision and the parties' agreement, the court did not err in permitting alternative solutions. However, the court erred in entering judgment against Michael for the amount of Norman's share. The trial court correctly attempted to correct this error in an amended judgment on February 15, 1985, after the appeal to this court had been filed. Thus, the trial court did not err in fashioning the alternative solution, but erred in entering a money judgment against Michael for Norman's one-sixth share.

■■ 4. The next issue is whether the trial court's February 15, 1985 amended judgment has any effect since the appeal was filed on February 4, 1984. The general rule is that an appeal, when perfected, divests the trial court of jurisdiction. This appeal was perfected prior to the February 15, 1985 amended judgment. We have held that a post-appeal order of the trial court is null and void because the trial court lost its jurisdiction to this court once appellant filed a notice of appeal. *Evans v. Blesi,* 345 N.W.2d 775 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. June 12, 1984). Thus, the February 15, 1985 amended judgment has no effect since jurisdiction shifted

to this court at the time of filing of the notice of appeal. *Id.*, 345 N.W.2d at 780.

Although the amended judgment is of no effect, the trial court was in a position to re-examine the judgment and properly rectified the error. Recognizing this, we order that the judgment against Michael be reduced from $43,386.17 to $2,970.17 and the property be partitioned, as the trial court attempted to do in its amended judgment.

 5 and 6. Hazel claims to appeal from the February 15, 1985 amended judgment. If that is the case, her appeal is not proper because jurisdiction had already shifted to this court. In addition, her brief challenges: (1) the original judgment in favor of Norman; (2) the grant of a motion in limine prior to the 1984 trial; and (3) the property valuation established by the November 6, 1984 judgment. Her notice of appeal on these issues was filed on April 22, 1985.

Pursuant to Minn.R.Civ.App.P. 104.01, "An appeal may be taken from a judgment within 90 days after its entry * * *." Hazel's appeal from the November 6, 1984 judgment is not timely and is without merit. However, considering the record, there is no doubt that she owes Norman one-half of the 1983 contract for deed payment.

### DECISION

The trial court's decision is affirmed in part, reversed in part, and remanded for entry of judgment consistent with this opinion.

Affirmed in part, reversed in part and remanded.