**Robert H. BRADLEY, Respondent,**

**v.**

**William O. BRADLEY, Appellant.**

**No. C4–96–825.**

Court of Appeals of Minnesota.

Oct. 29, 1996.

Review Denied Dec. 23, 1996.

D. Charles Macdonald, Julie Knox Chosy, Faegre & Benson, Minneapolis, for respondent.

Joe A. Walters, O'Connor & Hannan, Minneapolis, for appellant.

Considered and decided by AMUNDSON, P.J., TOUSSAINT, C.J., and FOLEY, J.

## OPINION

FOLEY, Judge. *

Respondent Robert Bradley sued appellant William Bradley seeking foreclosure on an equitable lien. Respondent moved for summary judgment, which the district court granted. On appeal, appellant argues that the district court erred as a matter of law in (1) granting respondent's motion for summary judgment, (2) denying appellant an evidentiary hearing and an additional redemption period, and (3) requiring appellant to contribute one-half of respondent's acquisition and necessary improvement costs in order to assert his claim to the property. We affirm.

## FACTS

On January 24, 1983, Robert Bradley, William Bradley, and TCR Corporation (TCR) purchased the subject property. As part of the purchase price, the Bradleys and TCR assumed the obligations under a bond issued to finance the previous owner's purchase of the property and secured by a mortgage on the property. The Bradleys are brothers, but they have not spoken with each other for over seven years. At the time of purchasing the property, each held 50 percent of the shares of TCR. By quitclaim deed dated July 18, 1990, TCR conveyed its interest in the property to the Bradleys as tenants in common.

Sometime between 1992 and 1995, CC Commercial Delaware LLC (CCC) acquired the bond and mortgage. The Bradleys defaulted on the payments due under the bond, and CCC began foreclosure proceedings on the mortgage. On or about March 1, 1995, CCC notified the Bradleys of the impending foreclosure sale. A sheriff's sale of the property took place on June 27, 1995, when CCC purchased the property for $3,000,000.

Neither of the parties tried to prevent the foreclosure. Nor did they participate in the foreclosure sale. On August 17, 1995, respondent purchased the property from CCC for $2,000,000, and then notified appellant of appellant's possible rights in the property. At least three times during the six months following the sale of the property to CCC, respondent asked appellant whether he would participate in ownership of the property. Appellant requested certain documents from respondent concerning the property, but did not communicate to respondent any intent to participate in ownership of the property.

On January 2, 1996, respondent filed suit in Brown County district court to foreclose his equitable lien on appellant's interest in the property. Appellant counterclaimed, seeking an accounting from respondent and a declaratory judgment concerning appellant's interest in the property. Respondent moved for summary judgment on his request for an order of foreclosure. The district court heard arguments on respondent's motion on March 11, 1996, and by judgment dated March 20, 1996, granted summary judgment. Respondent purchased appellant's interest in the property at foreclosure sale on May 28, 1996, for $1,042,767.12.

## ISSUES

I. Did the district court err in granting summary judgment on respondent's request

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

for foreclosure where respondent did not consult with appellant before purchasing the property from CCC?

II. Did the district court deprive appellant of due process by granting respondent's motion for summary judgment without an evidentiary hearing and denying appellant an additional redemption period?

III. Did the district court err by requiring appellant to contribute one-half of respondent's acquisition and necessary improvement costs incurred in connection with the property before asserting his rights in the property?

## ANALYSIS

On an appeal from summary judgment, the reviewing court must ask whether any genuine issues of material fact exist and whether the lower court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Where the material facts are not in dispute, a reviewing court need not defer to the district court's application of the law. *Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989). However, the grant of equitable relief is within the sound discretion of the district court, such that a reviewing court will reverse the grant of equitable relief only upon a showing of a clear abuse of discretion. *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979).

Appellant concedes that no issues of material fact exist relevant to the summary judgment. He argues instead that the district court erred as a matter of law in granting respondent the equitable remedy of foreclosure, denying appellant an evidentiary hearing and an additional redemption period, and requiring contribution as to all costs incurred by respondent in connection with the property. Accordingly, this court reviews de novo the grant of foreclosure under the abuse of discretion standard, and the adequacy of process provided and the amount of contribution required.

## I.

### Right of Redemption

A purchaser of property at a foreclosure sale takes title subject to an equitable right of redemption in the previous owners of the property. *See Kirsch v. Scandia American Bank,* 160 Minn. 269, 272, 199 N.W. 881, 882 (1924) (co-tenant who redeems land at foreclosure sale has equitable lien on his co-tenant's one-half). A party may redeem its interest in property lost through foreclosure sale by reimbursing all of the repurchaser's acquisition costs, or if another co-tenant has already redeemed the property, by paying that co-tenant the portion of the redemption money attributable to the later-redeeming co-tenant's interest in the property. *See, e.g., Buettel v. Harmount,* 46 Minn. 481, 482–83, 49 N.W. 250, 251 (1891) (holding former co-tenant entitled to redeem through contribution of one-half the redemption money). A co-tenant who repurchases property lost through foreclosure takes subject to his co-tenant's right of redemption. *Kirsch,* 160 Minn. at 272, 199 N.W. at 882. The right of redemption lasts six months from the date of the foreclosure sale. Minn.Stat. § 580.23, subd. 1 (1994).

Here, CCC purchased the property at foreclosure sale. Respondent then exercised his right of redemption and took title to the property, subject to appellant's continuing right of redemption. Appellant, in contrast, did not exercise his right of redemption during the six months following the property's foreclosure sale. Appellant's right of redemption lapsed, respondent's title became paramount to that of appellant, and respondent was entitled to a foreclosure sale of appellant's interest in the property. Upon expiration of the right of redemption, a redeeming co-tenant's title becomes paramount to that of a nonredeeming co-tenant. *Holterhoff v. Mead,* 36 Minn. 42, 45, 29 N.W. 675, 677 (1886).

### Oppressive Conduct

Appellant argues that the district court should have denied respondent's motion for summary judgment on the ground that respondent's allegedly "oppressive conduct" barred the grant of the equitable remedy of foreclosure. Appellant contends that respondent's conduct was oppressive because

respondent breached a fiduciary duty that he allegedly owed appellant.

Co-tenancy gives rise to a duty of the co-tenants "to sustain, or at any rate not to assail, the common interest." *Oliver v. Hedderly,* 32 Minn. 455, 456, 21 N.W. 478, 478 (1884). This duty does not, however, preclude one co-tenant from redeeming both his and another co-tenant's interest in property sold at foreclosure, regardless of whether the purchasing co-tenant consults with another co-tenant before redemption, because the "mortgage or interest of the purchaser is to be redeemed as an entirety, or not at all." *Buettel,* 46 Minn. at 482–83, 49 N.W. at 251. Because a co-tenant does not breach the duty owed among co-tenants by redeeming the entire estate, respondent did not breach his duty as a co-tenant by redeeming his and appellant's interests in the property.

If respondent breached a fiduciary duty, then that duty arose out of the parties' relationship not as co-tenants, but as partners. A partnership is an association of two or more persons to carry on an activity as co-owners for profit. *Cyrus v. Cyrus,* 242 Minn. 180, 184, 64 N.W.2d 538, 541 (1954). "There is no arbitrary test for determining whether a partnership exists * * * ." *Wormsbecker v. Donovan Constr. Co.,* 251 Minn. 277, 284, 87 N.W.2d 660, 664 (1958) (citing *Cyrus,* 242 Minn. at 183, 64 N.W.2d at 541). Minnesota courts have generally not found a partnership to exist absent a contract between the alleged partners. *See, e.g., Wallner v. Schmitz,* 239 Minn. 93, 95, 57 N.W.2d 821, 823 (1953) (a partnership is a contractual relationship); *Georgens v. Federal Deposit Ins. Corp.,* 406 N.W.2d 95, 97 (Minn.App. 1987) (parties may form partnership through mutual assent or conduct). Joint ownership or sharing of profits alone does not establish a partnership. *Riteway Carriers, Inc. v. Schue,* 248 Minn. 299, 302, 79 N.W.2d 505, 507 (1956); *Hammel v. Feigh,* 143 Minn. 115, 118, 173 N.W. 570, 571 (1919).

The facts of this case establish merely a co-tenancy, not a partnership. Appellant and respondent purchased the property together with TCR in 1982. The parties may have shared profits from ownership of the property, since the parties owned the property jointly, and appellant claims a right to his share of profits from the property. The parties did not, however, actively manage the property. Nor does the record show that the parties collaborated in any related business matters. Indeed, the parties have not even spoken with each other for over seven years.

Even if respondent's conduct constituted a breach of his fiduciary duty to appellant, respondent's actions did not prejudice appellant. If appellant had elected to redeem his interest in the property, he could have done so for one-half of respondent's acquisition costs, and would thereby have gained one-half of the benefit of the bargain struck by respondent. Moreover, respondent's purchase of the property did not shorten appellant's redemption period. In fact, respondent's redemption extended appellant's redemption period, because respondent's redemption and later foreclosure gave appellant the opportunity to repurchase his interest in the property as late as the May 28, 1996, foreclosure sale, five months after expiration of the parties' redemption period. On these facts, we cannot conclude that the district court abused its discretion in granting foreclosure of respondent's equitable lien against appellant's interest in the property.

## II.

Appellant argues that the district court denied him due process by declining to hold an evidentiary hearing before deciding respondent's motion for summary judgment, and by failing to provide him with a period of redemption after respondent's foreclosure sale. Appellant cites *Sprague Nat'l Bank v. Dotty,* 415 N.W.2d 725, 727 (Minn.App.1987), *review denied* (Minn. Jan. 28, 1988), in support of his claim that

> a foreclosure sale must be free from fraud or irregularity and an evidentiary hearing is warranted when some question exists as to bad faith, fraud, or unfair conduct.

The facts of *Sprague* bear little in common with this case. *Sprague* involved a bank that held a promissory note secured by real property owned by one person and personally guaranteed by two others. When the obligor under the note defaulted on its payments, the

bank sued for a foreclosure sale of the property securing the note. The bank assured the guarantors that it would not bid for the property in an amount less than the debt outstanding under the note, so that the guarantors would not be held personally liable for a difference between the foreclosure sale proceeds and the sum due under the note. In reliance on the bank's assurances, the guarantors did not attend the foreclosure sale to bid the sale price of the property up to the debt outstanding under the note. The bank then purchased the property for nearly $100,000 below the balance due on the note and sued the guarantors for a deficiency judgment in like amount. The court of appeals reversed the trial court's grant of summary judgment for the bank on the ground that the guarantors were not adequately protected from fraud by the mortgagor's ability to redeem and that a genuine issue of material fact existed concerning the bank's failure to act in good faith. *Id.* at 727.

This case, in contrast with *Sprague,* presents no genuine issue of material fact. Nor was appellant denied the opportunity to make full discovery and present, in his district court pleadings, all the factual issues and evidence essential to his claims. Moreover, contrary to the interests of the appellants in *Sprague,* here appellant's interests were adequately protected from any fraud that respondent might have committed. Appellant argues that respondent's purchase of the property from CCC at a price $1,000,000 lower than CCC's purchase price shows that respondent perpetrated a fraud against appellant. Appellant fails to show how respondent's conduct here injured appellant. The bargain struck by respondent did not prejudice appellant because appellant was not personally liable for any shortfall in the proceeds of the foreclosure sale. Even if respondent's $2,000,000 purchase of the property somehow constituted a fraud, appellant should not have been prejudiced thereby, because he could have avoided any disadvantage by simply redeeming his interest in the property and sharing in the benefit of the bargain struck by respondent. Under these circumstances, the denial of an evidentiary hearing did not amount to a denial of due process.

Appellant contends that the district court also violated appellant's due process rights by failing to provide appellant with a redemption period after respondent's foreclosure of appellant's interest in the property. Appellant cites *Kampsen v. County of Kandiyohi,* 441 N.W.2d 103, 106 (Minn. 1989) in support of this argument. To satisfy the minimum requirements of due process, a possessor of property subject to a right of redemption must give timely notice to the owner (1) of the nature and amount of possessor's claim, (2) of the owner's right to redeem, and (3) that failure to redeem before expiration of the allotted time will result in a sale to satisfy the debt. *Id.*

Here, respondent notified appellant of the nature and amount of respondent's claim within one week of respondent's purchase of the property from CCC. Respondent informed appellant that appellant could redeem his interest in the property, and that failure to do so would result in the loss of appellant's rights in the property. On these facts, the district court's failure to provide appellant with an additional period of redemption after respondent's foreclosure sale did not deny appellant due process.

III.

A co-tenant may redeem his interest in land from an earlier redeeming cotenant "upon making contribution according to [his] interest to the cost." *Oliver,* 32 Minn. at 457, 21 N.W. at 479. "Contribution is a creature of equity." *Hoverson v. Hoverson,* 216 Minn. 228, 235, 12 N.W.2d 501, 505 (1943). Thus, the later-redeeming co-tenant must contribute not only his share of the cost, but also his share of taxes paid and necessary improvements made by the earlier redeeming co-tenant during the period of redemption. *Kirsch,* 160 Minn. at 274, 199 N.W. at 882.

Appellant argues that the district court erred in requiring him to contribute to costs incurred by respondent under "contractual arrangements" that respondent entered into without consulting appellant. By "contractual arrangements," appellant apparently refers to the 1995 lease with Bridge Street

Partnership, which required respondent to make certain improvements on the property. Respondent most likely did not make the improvements to command a higher rent, because he could not increase rent on the property until expiration of the lease in 2012. The record does not indicate that the improvements were anything other than a bargaining chip in the lease negotiations and necessary for respondent to secure the lease. On these facts, we cannot say that the district court erred in requiring appellant to contribute to the cost of improvements required under the lease.

At oral argument, appellant asserted that *Hoverson* compels the conclusion that the district court erred in summarily requiring appellant to contribute to the cost of improvements made to the property. Because this case is distinguishable from *Hoverson,* we disagree. In *Hoverson,* the defendant, who had occupied, managed, and made improvements to others' real property, sought to establish title by adverse possession, or in the alternative, to obtain reimbursement for the value of his services and expenses related to the property. The supreme court held that the defendant failed to establish adverse possession, and denied the defendant contribution on the ground that although he had refused to disclose his income from the property, the value of his use of the property far exceeded his costs and the value of his services on the property. *Hoverson,* 216 Minn. at 236, 12 N.W.2d at 505.

Here, in contrast, respondent has not refused to account for his income from the property. Nor can we say that the benefits of respondent's possession of the property in the time leading up to foreclosure of appellant's lien far exceeded respondent's acquisition and improvement costs for the property. To the contrary, respondent's acquisition and improvement costs and the value of his services exceeded the benefits of his possession during the relevant period, viz., from the time respondent exercised his right of redemption to the time he foreclosed on appellant's equitable lien. Respondent paid $2,000,000 to obtain possession of the property and committed to make improvements at an additional cost of $500,000. In addition, respondent expended the efforts necessary to secure a tenant on the property. On the other side of the ledger, respondent received no income from the property during appellant's six-month redemption period and received rent payments of no more than $250,000 in the five months leading up to foreclosure of appellant's interest in the property. Where, as here, acquisition and necessary improvement costs, together with the value of services related to the property, exceed the benefits from the acquired property during the redemption period, contribution to the costs of necessary improvements is appropriate.

Even if the district court had overstated appellant's contribution, such error would have been harmless. A reviewing court will not reverse the trial court for error that the reviewing court can see did not change the result of the case. *In re the Welfare of D.T.N.,* 508 N.W.2d 790, 797 (Minn.App.1993), *review denied* (Minn. Jan. 14, 1994). Here, the district court recognized that any error in determining the costs subject to appellant's contribution would not change the result of the case if appellant chose not to contribute. The district court noted:

> Questions of fact may exist concerning [appellant's] liability for expenses incurred and entitlement to benefits received since [respondent] obtained the property, however it is undisputed that these issues will not be reached if [appellant] does not elect to contribute his half of the acquisition expenses.

Because appellant elected not to contribute his half of the acquisition expenses, any alleged error in computing appellant's contribution constituted harmless error and cannot support reversal.

## DECISION

Appellant has failed to show that the district court abused its discretion in granting summary judgment on respondent's request for a foreclosure sale. Appellant failed to exercise his rights in the property within the redemption period, and his right of redemption lapsed. Respondent's title became paramount to that of appellant, and appellant

cannot now assert rights either to the property or to any benefits that flow therefrom. Further, we are satisfied that under the circumstances, the court's denial of an evidentiary hearing and an additional redemption period did not, as a matter or law, amount to a denial of appellant's right to due process. Lastly, the court properly required appellant to contribute to respondent's acquisition and necessary improvement costs incurred during the redemption period in order to assert his claim to the property.

**Affirmed.**