Donald LEAON, et al., Respondents,

v.

WASHINGTON COUNTY, Minnesota
and Washington County Board of
Commissioners, Defendants,

James Trudeau, et al., Defendants,

Richard Hudella, et al., Defendants,

Allan Palmer, Appellant.

No. C7–86–784.

Supreme Court of Minnesota.

Dec. 19, 1986.

Frederick C. Brown, Keith J. Halleland, Minneapolis, for Allan Palmer and James Trudeau, et al.

George S. Roth, Daniel Roth, Minneapolis, for Washington County, et al.

Theodore Collins, Lori J. Nuebel, St. Paul, for respondents.

SIMONETT, Justice.

Will amendment of a John Doe pleading "relate back" to avoid the statute of limitations? We answer this certified question no. We also accept review and affirm rulings of the trial court adverse to plaintiffs' various claims of liability against other named defendants.

On the evening of Wednesday, September 8, 1982, plaintiff-respondent Donald Leaon attended a stag party at the Green Acres Recreation site. On his arrival at about 11:30 p.m., with the party in full swing, Leaon was met at the door by about six men. They "escorted" him to a stage, where he was forced to lie down on his back with a dollar bill in his mouth. A nude, female dancer touched her vagina to Leaon's face and, with her hand, removed the dollar bill. Humiliated and much distressed, Leaon left the party soon afterwards.

Plaintiff was a Washington County Deputy Sheriff. The stag party was in honor of a coworker who was to be married and was organized by four Washington County deputies who were friends of the groom. The party was attended almost exclusively by law enforcement personnel from Washington County and the surrounding areas. A flyer publicizing the party had been posted in the squad room of the Washington County Sheriff's office. The four organizers were deputies Gary Swanson, Roy Childers, Richard Peterson, and James Fure. These men had rented the hall, put out flyers, sold $5 tickets to defray expenses, obtained a beer license and a keg of beer, arranged for X-rated movies, and hired the stripper. At the party, people served themselves and everyone was pretty much on their own.

The morning after the party, Leaon called the sheriff's office and spoke with deputy Allan Palmer. Leaon told Palmer that he did not like being pushed around and that he wanted the names of the people involved. Palmer told Leaon he did not know what Leaon was talking about or why he was calling him. On Saturday, September 11, Leaon came to work but immediately became involved in a verbal altercation with deputies Fure and Childers. Leaon says Fure and Childers threatened him with physical violence. Upset, concerned for his safety, Leaon left work.

On September 12 and 13 Leaon called in sick, but on September 14 he met with Washington County Sheriff James Trudeau. There is a dispute as to what was said. Leaon claims the sheriff (who had made only a brief appearance at the party) told him, among other things, that "[y]ou are never going to work in law enforcement again." In any event, the sheriff orally reprimanded the four party organizers, although it appears Leaon was not advised of this. Later, the matter was referred for independent investigation to the Dakota County Sheriff's office. Leaon was able to identify Allan Palmer as one of the men who escorted him to the stage and David Roettger, a Stillwater police officer, as one of the men who held him down on the stage, but he was unable to identify anyone else participating in the stripper incident.

Leaon, on the recommendation of his psychiatrist, continued on sick leave until September 20. From September 20 to October 6 he took vacation time. Thereafter, he was on unpaid leave of absence until May 14, 1983, when the county ruled he had resigned. Leaon claims his "resignation" was really an involuntary, forced termination of employment because the county failed to provide him with safe working conditions.

In February 1983, plaintiff Leaon and his wife commenced this lawsuit. They al-

870

leged causes of action for false imprisonment, battery, breach of an affirmative duty to protect, illegal sale of liquor, and wrongful termination of employment. They included as defendants the four organizers, deputies Swanson, Childers, Peterson, and Fure; the sheriff, Trudeau; Washington County and its board of commissioners; the Green Acres Recreational Site; and Mary Roe and John Doe. They alleged "Defendants John Doe, and other persons not at present identified, are Washington County deputy sheriffs and peace officers from other jurisdictions who were present at the Green Acres * * *." Later plaintiffs amended their complaint to name David Roettger as a defendant. After suit was started, the parties engaged in extensive discovery.

On November 8, 1985, more than 3 years after the stag party, plaintiffs moved to amend their complaint to add Allan Palmer as an additional defendant under their John Doe allegation and to add a separate claim of intentional infliction of emotional distress against all defendants. Thereafter various defendants moved for summary judgment, and plaintiffs moved to amend their complaint yet again to add a claim for negligent infliction of emotional distress against all defendants. Finally, in April 1986, defendant Palmer moved to dismiss the intentional tort claims against him on the ground that they were barred by the statute of limitations. The trial court, in a series of orders over several months, granted summary judgment in favor of the four deputy organizers, the sheriff, and the county and its board of commissioners. The trial court also ruled Allan Palmer was properly added as a John Doe defendant and denied Palmer's motion to dismiss the intentional tort claims.

After the procedural maneuvering, the status of the litigation is now as follows: (1) Plaintiffs have existing claims against Palmer and Roettger for false imprisonment, assault and battery, and intentional infliction of emotional distress; (2) plaintiffs have an existing claim against Green Acres for negligent breach of an affirmative duty to provide for Donald Leaon's

safety; and (3) plaintiffs have no claims against Washington County, its board of commissioners, Sheriff Trudeau, or Deputies Swanson, Childers, Peterson, and Fure.

In its order of April 9, 1986, denying Palmer's motion to dismiss the intentional tort claims against him, the trial court certified as important and doubtful the question whether a John Doe pleading can be used to avoid the statute of limitations. At plaintiffs' request, the trial court also filed an amended judgment declaring there existed no just reason for delay of entry of final judgment on its orders granting summary judgment to the various defendants, thus making the partial summary judgments appealable. On May 7, 1986, defendant Palmer filed a notice of appeal to the court of appeals on the certified question. On May 20, 1986, plaintiffs Leaon filed a notice of review, seeking thereby to obtain judicial review of the partial summary judgments and of denial of their motion to assert an additional claim of negligent infliction of emotional distress. Because of the certified question, the case was transferred to this court for disposition.

The issues before us are: (1) whether a John Doe pleading, when amended to identify the John Doe, relates back to avoid the statute of limitations; (2) whether plaintiff-respondents' notice of review to Palmer's appeal suffices to obtain appellate review of plaintiff-respondents' claims of error against defendants other than Palmer; and (3) if the notice of review is sufficient, whether the trial court's rulings were in error.

I.

■ In answer to the certified question, we hold a John Doe pleading has no "relation back" effect under Minn.R.Civ.P. 9.08; nor, on the facts of this case, may plaintiffs' pleading relate back under Minn.R. Civ.P. 15.03. The trial court's ruling that the intentional tort claims against Palmer are not time barred is reversed.

The statute of limitations for intentional torts is 2 years. Minn.Stat. § 541.07(1)

(1984). Not until February 26, 1986, long after the statute of limitations had run, did plaintiffs move to amend their complaint to name Allan Palmer as a defendant. Because plaintiffs had alleged intentional torts against John Doe in their original pleading, the trial court allowed the amendment, apparently ruling that the amendment related back so as to avoid the statute of limitations.

■ "When a party is ignorant of the name of an opposing party and so alleges in his pleading," says Minn.R.Civ.P. 9.08, "the opposing party may be designated by any name, and when his true name is discovered the process and all pleadings and proceedings in the action may be amended by substituting the true name." Part of plaintiffs' problem is that Allan Palmer was not a proper John Doe defendant because his identity was known to plaintiffs when they filed their original complaint. But even if Allan Palmer were a proper John Doe, Rule 9.08 is of no avail.

Rule 9.08 seems to serve a modest purpose. Even without a John Doe pleading, a party can amend to add a party under Minn.R.Civ.P. 15.01. Yet, at least by designating a John Doe, the "[named] defendants are on notice that the complaint will be amended." *Peterson v. Sorlien*, 299 N.W.2d 123, 132 (Minn.1980). Then, too, where (as here) a pleading alleges a named defendant is vicariously liable for the conduct of some unknown person, it may be helpful to designate the unknown party as John Doe. In any event, Rule 9.08 does not toll the statute of limitations. The rule says nothing about any "relation back" effect. "The naming of a party under Rule 9.08 does not entitle the amended pleadings to relate back as to the action against that individual * * *." Herr & Haydock, *Minnesota Practice, Rules of Civil Procedure Annotated* § 9.11 (1985).

If plaintiffs are to escape the statute of limitations on their intentional tort claims against defendant Palmer, they must do so under Minn.R.Civ.P. 15.03.[1] Under this rule, if certain conditions are met, an amendment changing a party will relate back to the date of the original pleading and avoid being barred by the statute of limitations. Thus, here, if during the 2–year period while the statute of limitations was running, Allan Palmer had such notice of the pending lawsuit that his subsequent inclusion in the lawsuit as a defendant would not be prejudicial to his defense, and if Allan Palmer "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him," then Palmer's inclusion as a named defendant after the limitation period had run would relate back to the original pleading, thereby avoiding the time bar.

■ But here, if Palmer knew anything, it was that Leaon knew exactly who Palmer was and that Palmer was involved in the incident at the stag party. The day after the stag party, Donald Leaon called Palmer on the telephone and intimated Palmer's involvement. On September 16, 1982, prior to commencement of the lawsuit, Leaon, in an investigation interview, identified Palmer as one of the men who prevented him from leaving the stage. Again, when de-

---

1. Minn.R.Civ.P. 15.03 provides:
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in main-taining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

 A threshold issue in this case is whether substitution of Palmer for a John Doe designation is the kind of change of parties contemplated by Rule 15.03. There is some federal case authority for this kind of change. *See Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir.1978). We do not reach the issue both because there is no need to do so here and because the parties have not raised it.

posed in January 1984, Leaon identified Palmer as one of the persons who "escorted" him to the stage. This is not a case of a potential defendant laying low while aware the plaintiff is proceeding under a mistaken belief as to who he is. This is simply a case of a plaintiff choosing, for whatever reasons, not to make a known defendant a party until it was too late to do so.

## II.

█ Palmer filed a notice of appeal and in his statement of the case raised only the relation-back pleading issue posed in the trial court's certified question. Plaintiffs did not file a notice of appeal, as they could have done, from the summary judgments decided in favor of the other defendants. Instead, they filed a notice of review and now ask us to review eight issues involving defendants other than Palmer. May we do so?

Minn.R.Civ.App.P. 106 says, "A respondent may obtain review of a judgment or orders entered in the same action which may adversely affect him by filing a notice of review * * *." This language seems broad enough to allow plaintiffs to obtain review of the summary judgments dismissing their claims against Washington County, its board of commissioners, the sheriff, and deputies Swanson, Childers, Peterson, and Fure. Nevertheless, the procedure is troublesome. Washington County, for example, claims this maneuver is unfair because it places the county and the other defendants, ostensibly at least, in the role of appellants. Moreover, if the party served with the notice of review in this situation wishes itself to raise some other issue decided below adversely to it, it is unclear how this is to be done.

Proper practice, we think, would have been for plaintiffs to have filed a separate notice of appeal from the judgments involving the other defendants, particularly here where the trial court, pursuant to Minn.R. Civ.P. 54.02, made those partial summary judgments appealable as final judgments. The procedural stance of the parties and the presentation of the issues would then have been better presented for appellate review. In any event, no one seeks a dismissal of plaintiffs' appeal, and defendants were accorded respondent status in this court. Moreover, although Palmer's appeal was limited to the certified question, he apparently shares with the other defendants an interest in affirming the trial court's ruling refusing to allow plaintiffs a claim for negligent infliction of emotional distress. We believe, therefore, that the interests of justice are best served by accepting plaintiffs' notice of review.

## III.

█ 1. Plaintiffs' complaint first alleges false imprisonment and assault and battery against defendants Swanson, Childers, Peterson, and Fure. The trial court granted these defendants summary judgment dismissing these claims as a matter of law. We affirm.

There is no evidence that any of these four deputies participated in the incident with the nude dancer.[2] In fact, Donald Leaon's testimony is that neither Swanson, Childers, Peterson, nor Fure were among those who escorted him to the stage and imprisoned him there. Rather, plaintiffs' theory seems to be that the four deputies are liable under a theory of "joint concerted tortious conduct." Restatement (Second) of Torts § 876 (1977); *see Olson v. Ische*, 343 N.W.2d 284 (Minn.1984). Plaintiffs suggest that the four deputies should be liable because they somehow acted in concert with those persons who were directly involved. To impose such liability, however, something more than mere presence at the stag party is required, *Olson*, 343 N.W.2d at 289, and Leaon's opinion

2. The only persons involved in the incident that have been identified are Allan Palmer and David Roettger. The claim against Palmer has now been dismissed because of the statute of limitations. David Roettger, understandably, never moved for summary judgment, and the claims for false imprisonment and battery remain pending against him.

that the incident on the stage was planned is nothing more than surmise.

2. Plaintiffs' complaint next alleges a cause of action against deputies Swanson, Childers, Peterson, and Fure for breach of an affirmative duty to protect Donald Leaon from being assaulted and falsely imprisoned. The trial court again granted summary judgment for defendants on this claim. We affirm.

 Ordinarily a person owes no duty to control the conduct of another unless some special relationship exists. Plaintiffs claim a duty arises here because the four defendants were deputy sheriffs, because they were the organizers of the stag party, and because, as "possessors of the land," they had a duty to keep the premises reasonably safe. Mere status as police officers does not, however, give rise to an affirmative duty to protect. *See Warren v. District of Columbia*, 444 A.2d 1 (D.C.App. 1981), cited as dispositive in *Williams v. State*, 34 Cal.3d 18, 24 n. 3, 664 P.2d 137, 140 n. 3, 192 Cal.Rptr. 233, 236 n. 3 (1983). Neither does defendants' status as organizers of the party create a special relationship between them and Leaon requiring them to exercise reasonable care to protect Leaon. *See* Restatement (Second) of Torts §§ 314A, 318 (1965). Finally, a possessor of land may have a duty to protect, but this duty arises only if the possessor "(a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control." *Id.* § 318. Ordinarily, this is a question of fact, but nothing in the record indicates that these two requirements for imposition of section 318 liability might exist.

3. Next, the trial court allowed plaintiffs to amend their complaint to allege intentional infliction of emotional distress against all defendants, but then granted summary judgment, dismissing the claim against all defendants except Allan Palmer and David Roettger. We affirm.

It appears that the Leaons assert five claims of intentional infliction of emotional distress: (1) against Swanson, Childers, Peterson, and Fure for their actions at the stag party and at the sheriff's office later; (2) against Sheriff Trudeau for conduct after the party; (3) against Washington County and its board of commissioners for the workplace events resulting in Leaon's losing his job; (4) against Sheriff Trudeau, under the doctrine of respondeat superior, for the events at the stag party; and (5) against Washington County and its board of commissioners, under the doctrine of respondeat superior, for the events at the stag party and afterwards at the sheriff's office.

 Under *Hubbard v. United Press International Inc.*, 330 N.W.2d 428 (Minn. 1983), to sustain a claim for intentional infliction of emotional distress (1) the defendants' conduct must be extreme and outrageous, (2) it must be intentional or reckless, (3) it must cause emotional distress, and (4) the distress must be severe. The trier of fact could find that the incident at the stag party was outrageous and intentional, and also, perhaps, that the incident caused at least Donald Leaon severe emotional distress. As a matter of law, however, we hold that events occurring after the party do not qualify as extreme and outrageous. But as with battery and false imprisonment, the only persons directly involved with the nude dancer incident were Palmer and Roettger, and, consequently, the trial court properly dismissed the claim of intentional infliction of emotional distress against the other individual defendants.

 4. This leaves the claim that Washington County and its board of commissioners are liable, under respondeat superior, for intentional infliction of emotional distress, and also for the torts of false imprisonment, assault and battery, and breach of a duty to protect or rescue. Sheriff Trudeau, it is also alleged, is liable for intentional infliction of emotional distress under respondeat superior. The trial court dismissed these claims, and we affirm.

For respondeat superior to lie, there must be, first, an actor personally liable for the tort, and, second, the actor must be within the scope of the employment by the employer. Assuming some of the persons who participated in the nude dancer incident were Washington County deputies, the issue is whether the trial court could say, as a matter of law, that these employees were not within the scope of their employment. *See Lange v. National Biscuit Co.*, 297 Minn. 399, 404, 211 N.W.2d 783, 786 (1973). Plaintiffs argue the stag party was like an "office party" sponsored and supervised by an employer. We disagree. *Harris v. Trojan Fireworks Co.*, 120 Cal. App.3d 157, 174 Cal.Rptr. 452 (4th Dist. 1981), cited by plaintiffs, is not on point. Although the sheriff was aware of the stag party, there is no evidence suggesting the party was sponsored or supervised by Washington County. The party was not held at the employer's place of business, nor during normal working hours, nor did the employer furnish any of the refreshments. This was simply a private party by and for people who knew each other at work. An employer is not legally responsible for what his employees choose to do socially when off-duty.

**IV.**

Plaintiffs' complaint also alleges causes of action against Washington County, its board of commissioners, and Sheriff Trudeau for wrongful termination of employment and breach of a contractual duty to provide a safe workplace. The trial court granted defendants summary judgment. We affirm.

Donald Leaon asserts that it was unsafe for him to return to work after the stag party because of the threatening conduct of his coworkers; that his employer failed to correct the unsafe working conditions; and that, as a result thereof, in breach of Leaon's employment contract, Leaon was wrongfully discharged. The trial court took the position, assuming fact issues on unsafe work conditions and constructive discharge existed, that nevertheless Leaon had failed to exhaust his administrative remedies, and, therefore, his court action was barred.

The record shows that Leaon was covered under a collective bargaining agreement between his union and the county. The agreement contains a grievance procedure for resolution of employment disputes such as Leaon's, a procedure which culminates in final and binding arbitration before a neutral arbitrator. In addition, Washington County had a personnel administration system in effect. This included a rule requiring the county to provide a safe workplace. Pursuant to Minn.Stat. § 375.-60, subd. 1 (1982), the county's personnel rules also included a grievance procedure for resolving disputes, including disciplinary matters and job termination, with an appeal to a neutral Personnel Board of Appeals and a further appeal to the district court.

Donald Leaon chose not to grieve. Failure to grieve under the county's personnel administration system would be a failure to exhaust administrative remedies. Failure to grieve under the collective bargaining agreement is also a failure to exhaust administrative remedies, although it also might be characterized as a failure to pursue the exclusive remedy contractually provided for resolution of the dispute. *See Rowan v. K.W. McKee, Inc.*, 262 Minn. 366, 375, 114 N.W.2d 692, 697 (1962). An employee may escape grievance arbitration of his discharge if it is shown it would be futile. *Id.* Leaon argues that he could not have had a fair hearing in either grievance procedure because county authorities were prejudiced against his cause. The futility of administrative remedies is a question of law for the court, and here the trial court concluded that plaintiff's resort to the grievance process would not have been futile. We agree.

**V.**

Finally, we hold that the trial court did not err in denying plaintiffs' motion to add a claim for negligent infliction of emotional distress.

Where defendant's negligence causes emotional distress to plaintiff without any accompanying physical impact, plaintiff may still recover for emotional disorders if plaintiff was within the scope of danger of the negligent act and if plaintiff exhibits physical manifestations of the emotional distress. *Stadler v. Cross*, 295 N.W.2d 552, 553 (Minn.1980); *Okrina v. Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259 (1969). Here the trial court ruled that Donald Leaon failed to show physical manifestations of emotional distress. As to Mary Leaon, the trial court pointed out that she had not been in the zone of danger. Donald Leaon testified he lost weight (later regained), became depressed, and exhibited feelings of anger, fear, and bitterness. These symptoms do not satisfy the physical manifestations test, a test designed to assure the genuineness of the alleged emotional distress. *Compare Quill v. Trans-World Airlines, Inc.*, 361 N.W.2d 438 (Minn.App.), *pet. for further rev. denied*, (1985). There the court of appeals concluded that plaintiff's claimed emotional distress, undoubtedly attributable to a terrifying experience (the sudden, violent tailspin of a commercial airliner), was under those circumstances sufficiently manifested by the objective, physical symptoms of sweaty hands, elevated blood pressure, and adrenaline surges which reoccurred on subsequent airplane flights.

One final comment. The conduct at the party towards Donald Leaon was despicable. Nor is the convenient "loss" of memory by law enforcement personnel attending the party edifying. At the same time, as the trial court observed, Donald Leaon "had as much opportunity and certainly more reason to observe the culpable parties." Leaon has, however, been able to point to only Allan Palmer and David Roettger. We concur with the trial judge's concluding comment: "The court is unable and unwilling to transfer the liability of the unnamed wrongdoers to the individual defendants merely because of their presence at the party or to Washington County simply because it may have employed these persons who behaved with such mean contempt of human dignity on their off-duty hours."

Reversed in part pursuant to certified question answered; in all other parts, affirmed.