Randy KAMPSEN, Appellant,

v.

COUNTY OF KANDIYOHI, Steven Strom, et al., Respondents.

No. C6–88–330.

Court of Appeals of Minnesota.

July 26, 1988.
Review Granted Sept. 28, 1988.

Robert D. Stoneburner, Paynesville, for Randy Kampsen.

Robert M. Frisbee, Frisbee & Holahan, Ltd., Edina, for Kandiyohi County.

George E. Hulstrand, Hulstrand, Anderson & Larson, Willmar, for Steven Strom, et al.

Heard, considered and decided by HUSPENI, P.J., and NORTON and THOREEN *, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Randy Kampsen, brought suit seeking to recover for damages allegedly resulting when his truck was impounded by Kandiyohi Sheriff's Deputies and towed by Gordy's Service and Towing. The vehicle was eventually sold to a salvage company

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

after appellant failed to reclaim it from the towing company. On December 2, 1987, summary judgment was entered in favor of respondents Kandiyohi County, and Steven and David Strom, individually and d/b/a Gordy's Service and Towing. The district court also awarded respondents attorney fees in the amount of $2,750 ($2,000 to respondents Stroms and $750 to respondent Kandiyohi County). Appellant challenges both the summary judgment and the award of attorney fees. We reverse and remand for trial.

## FACTS

Appellant was the owner of a 1973 Ford pick-up truck which he purchased in 1983 at a cost of $1,000. According to appellant, he spent approximately $1,470 in repairs on the truck. He estimated its value at $2,000.

On September 21, 1985, Kandiyohi Sheriff's Deputies stopped appellant's vehicle on suspicion that it or the driver of the vehicle, Arthur Charles Smith, was involved in criminal activity. Appellant was in the Twin Cities at the time and claims Smith was using the vehicle without his permission. The deputies found numerous guns and rifles in the car. Upon arresting Smith and impounding the vehicle, the deputies contacted respondent Steven Strom and instructed him to tow appellant's truck.

Appellant was not notified by either of the respondents that his truck had been towed. However, appellant learned that Smith had been arrested two to three days after the fact. He also discovered that Smith had been driving his car at the time. Appellant alleged in his complaint:

> That during September 1985—April 1986, [appellant] and members of his family made numerous telephone calls to Kandiyohi County Sheriff's Department requesting information as to the whereabouts of the vehicle, and were told on numerous occasions that the Sheriff's Department had not seized the subject vehicle, and knew nothing of its whereabouts.

Appellant did not contact respondent Gordy's Towing to ask if it had his truck.

On December 11, 1985, almost three months after appellant's vehicle had been impounded, respondent towing service sent, via certified mail, notice to appellant that his vehicle would be sold if it was not reclaimed and service charges (towing and storage) were not paid. The notice was sent to the address on the impoundment slip which was apparently obtained from vehicle registration information. The notice was returned to respondent towing service stamped "return to sender." Appellant had moved and left no forwarding address. Nor had he changed his address listed on the vehicle's title registration. On January 4, 1986, respondent towing service sold the truck to a salvage yard for $200. This was $291.50 less than the vehicle had accrued in towing and storage charges.

## ISSUES

1. Were respondents' motions for summary judgment properly granted in this case?

2. Did the trial court abuse its discretion in awarding attorney fees to respondents?

## I.

On appeal from a summary judgment, it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

■ The trial court, in dismissing appellant's claim against the county, stated:

> [Appellant's] claim against the [respondent] County * * * is totally without merit. Even if the County were vicariously liable for the acts of the sheriff, the action of the sheriff in deciding to impound the vehicle was clearly a discretionary act which does not expose the County to tort liability.

This was an incorrect basis upon which to dismiss appellant's claim. Minn.Stat. § 466.02 (1984) provides:

> Subject to the limitations of sections 466.01 to 466.15, every municipality is

subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function.

*Id.* Under Minn.Stat. § 466.01, "municipality" includes any county. If there is any question as to whether a county is liable for the torts of a law enforcement agency under the county's authority (including the sheriff's department), it would seem to be impliedly answered by Minn.Stat. § 466.101 (1986). It provides:

> When costs are assessed against a municipality for injuries incurred or other medical expenses connected with the arrest of individuals violating Minnesota Statutes, the municipality responsible for the hiring, firing, training, and control of the law enforcement and other employees involved in the arrest is responsible for those costs.

*Id.* Clearly, the tort liability act contemplates the county's liability for the acts of the sheriff's office in some cases.

Respondent cites two cases in support of its argument that recent case law clearly establishes the county is not liable under the doctrine of respondeat superior. However, in each of the cases cited, the action was brought under 42 U.S.C. § 1983. Respondent has not cited any case which suggests that the doctrine of respondeat superior would not be applicable in other types of actions. At least one Minnesota case suggests the opposite. In *Leaon v. Washington County,* 397 N.W.2d 867 (Minn. 1986), a deputy sheriff brought suit against the county and others alleging false imprisonment, battery, negligent infliction of emotional distress and several other charges. The deputy's alleged injuries were suffered at a stag party for an employee of the sheriff's department that was organized by four other sheriff's deputies. While the claim against the county was dismissed by the trial court and affirmed by the Minnesota Supreme Court, the case points out that, under other circumstances, an action against the county for acts of employees of the sheriff's office, on a theory of respondeat superior, could be maintained. In *Leaon,* the court found that the

deputies were not acting *within the scope of their employment* when they held the party. The court stated:

> For respondeat superior to lie, there must be, first, an actor personally liable for the tort, and second, the actor must be within the scope of the employment by the employer.

*Id.* at 874. No distinction was made between the case where a party sues a county for the acts of its sheriff's deputies and other instances of respondeat superior.

In this case, it is clear that the deputies who impounded appellant's car were acting within the scope of their employment. Therefore, the trial court erred in finding that the county was not potentially liable in this case.

■ Respondent asserts that even if the county is liable for the acts of its sheriff's deputies, the county is immune under the discretionary act doctrine. Minn.Stat. § 466.03, subd. 6 (1984), provides that a county shall not be liable for:

> Any claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

*Id.* The discretionary acts exception to municipal liability generally applies more to "decisions made on the executive (planning) level of conduct than on the operational level." *See Hansen v. City of St. Paul,* 298 Minn. 205, 211, 214 N.W.2d 346, 350 (1974); *Marlow v. City of Columbia Heights,* 284 N.W.2d 389, 392 (Minn.1979). In this case, the decision to impound appellant's truck was clearly made on the "operational level" and not on a "planning level." Therefore, the court's finding that the act of towing the truck came within the discretionary act doctrine is erroneous.

■ Once the conclusion is reached that the county may be liable for the acts of the sheriff's deputies acting within the scope of their employment, a fact issue develops as to whether the deputies acted properly in this context. Though appellant has cited no statute which sets forth the obligations of the sheriff's department to notify the owner of an impounded car, respondents

have likewise failed to cite a statute which places the burden on the owner to search for his car. Both respondents and the trial court appear to have assumed that it was appellant's responsibility to contact the sheriff's department. However, we believe this to be a fact issue to be resolved by the trier of fact. Therefore, summary judgment was inappropriate.

Appellant has also raised a genuine issue of both law and fact as to whether he was entitled to the notice provisions of Minn. Stat. ch. 514 (1984). Minn.Stat. § 514.18, subd. 1, provides:

> Whoever, at the request of the owner or legal possessor of any personal property, shall store or care for or contribute in any of the modes mentioned in section 514.19 to its preservation, care, or to the enhancement of its value, shall have a lien upon such property for the price or value of such storage, care or contribution, and for any legal charges against the same paid by such person to any other person, and the right to retain the property in his possession until such lien is lawfully discharged.

*Id.* A lien and right of detainer exists for "keeping or storing property as a bailee." Minn.Stat. § 514.19 (2). Thus, in determining whether appellant was entitled to the pre-sale notice provisions of the statute, the key issue then seems to be whether respondent towing company was a bailee.

Under certain circumstances, it is a question of fact whether a particular transaction was a bailment.

> Where the agreement is clear on its face, it is for the court, and not the jury, to pass on the question whether the writing is in fact a bailment, and where the terms of an agreement are unambiguous, the construction of the agreement is a matter of law for the court; but on conflicting evidence it has been held a question for the jury to decide whether the transaction was a bailment, and the terms and conditions thereof.

8 C.J.S. Bailments § 115. In this case, there is a question of fact whether a bailment relationship existed between appellant and respondent towing company.

Three elements are necessary in order to create a bailment relationship: (1) delivery without transfer of ownership; (2) implied or express acceptance; and (3) an express or implied agreement that the goods be returned. *See, e.g., Wallinga v. Johnson,* 269 Minn. 436, 438, 131 N.W.2d 216, 218 (1964). Here, the sheriff's deputy impounding the car could be deemed to have delivered the truck to respondent towing company. As there seems to be no question but that the deputies lawfully impounded the truck (making them "legal possessors" for purposes of section 514.18), the first element of a bailment relationship is arguably satisfied. Further, the towing company clearly "accepted" the truck when it towed it. Finally, there was an express agreement that the truck would be returned. On the "Impounding Slip," authorizing the towing company to take the impounded vehicle, the following language is printed:

> This is your authority, after all expenses incurred are paid by bearer, to release to the owner * * * or his authorized agent, the above described vehicle, which you are holding for this department.

The last phrase of the impounding slip— "which you are holding for this department"—could lead one to conclude that a bailment existed between the sheriff's office and the towing company. Thus we conclude that a fact issue exists as to whether the bailment relationship extended to appellant and thus whether appellant was entitled to notice provisions of Minn. Stat. § 514.21.

Respondent towing company asserts that had appellant complied with the duty imposed under Minn.Stat. § 171.11 to notify the Department of Motor Vehicles of his change of address, the notice respondent sent to appellant regarding the impending sale of his truck would have reached him. While it may be true that appellant failed to comply with section 171.11, there is nothing in the record to support the implication that but for appellant's failure, respondent's notice to appellant would have reached him. Respondent sent the notice to appellant at the address on the impound-

ment slip. There is nothing in the record which indicates that when the notice was returned to respondent it contacted the Department of Motor Vehicles in an attempt to ascertain appellant's new address. Therefore, we do not believe appellant's failure to notify the department of his change of address is dispositive of the question whether respondent gave proper notice to appellant.

Even if we were to agree with the trial court that appellant's failure to either inquire into the whereabouts of his truck or notify the Department of Motor Vehicles of his new address was sufficient to negate any duty on the part of respondent to give fuller notice to appellant, we believe one issue would still remain for trial; i.e., whether respondent's conduct in the actual sale of the truck was reasonable. According to appellant, the truck had a value of $2,000. Respondent claims it could only get $200 for the truck. However, respondent apparently contacted only one party when it disposed of appellant's truck. Whether this was appropriate or whether respondent obtained a fair price for the truck are questions for the trier of fact and should not have been disposed of on a motion for summary judgment.

## II.

The second issue before this court is whether the trial court acted properly in awarding attorney fees to respondents. An award of attorney fees may be upset only upon a finding of an abuse of discretion by the trial court. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn.1982); *National Recruiters, Inc. v. Toro Company*, 343 N.W.2d 704, 709 (Minn.Ct.App.1984). Fees may be awarded upon a finding that a complaint is unwarranted or unfounded. *Valento v. Ulrich*, 402 N.W.2d 809, 814 (Minn.Ct.App.1987). Under Minn.Stat. § 549.21 (1986), claims can be assessed against a party upon a finding that the claim is frivolous and that it is costly to the other party.

In light of our holding that summary judgment was improperly granted in this case, the award of attorney fees must be reversed. The trial court's finding that appellant's suit is frivolous is apparently rooted in its assumption that appellant had the duty to track down his truck after it was impounded and that respondents had no duty to inform appellant of the whereabouts of his vehicle. As noted above, this was an incorrect assumption. Appellant has raised genuine issues of law and fact. Therefore, the award of fees was improper.

## DECISION

The trial court erred in granting summary judgment in favor of respondents. Respondent county may be liable for the actions of its sheriff's deputies as their actions are not protected by the discretionary act doctrine. Further, it cannot be said, as a matter of law, it was appellant's duty to search for his truck or that respondents properly disposed of the vehicle. Finally, the award of attorney fees in this instance was improper.

Reversed and remanded.