Randy KAMPSEN, Respondent,

v.

COUNTY OF KANDIYOHI, Respondent,

Steven Strom, et al., etc.,
Petitioners, Appellants.

No. C6–88–330.

Supreme Court of Minnesota.

May 26, 1989.

George E. Hulstrand, Hulstrand, Anderson & Larson, Willmar, for appellants.

Robert D. Stoneburner, Paynesville, for Randy Kampsen.

Robert M. Frisbee, Frisbee & Holahan, Ltd., Edina, for Kandiyohi County.

KELLEY, Justice.

The issue posed by this case is whether one who possesses personal property owned by another, converts the latter's property by retaining it and ultimately selling it to satisfy a claimed lien without first taking steps reasonably designed to provide notification to the owner of the intent to foreclose the claimed lien. By granting the possessor summary judgment, the trial court, in effect, held that the possessor as a matter of law had provided adequate notification. That holding was vacated by the court of appeals and the case remanded to the trial court for trial of the issue of whether the possessor was a bailee within, and, therefore, entitled to, the notification and sale protections afforded a bailor by Minn.Stat. § 514.18–514.22 (1988).[1] We af-

---

1. *Kampsen v. County of Kandiyohi,* 426 N.W.2d 917 (Minn.App.1988). In this conversion action Kandiyohi County was also named defendant on the theory of *respondeat superior* for actions of its sheriff's department officers. It claimed immunity from suit because the actions of the sheriff's deputies were discretionary. The court of appeals rejected this claim and remanded the

firm the remand for trial for the purpose of resolving a factual issue relative to the adequacy of the possessor's efforts to provide notification.

In 1985 the appellants David and Steven Strom were engaged in business as Gordy's Service and Towing (Gordy's) in Willmar, Minnesota. From time to time Kandiyohi County law enforcement officers engaged Gordy's to tow and store vehicles which they had impounded in connection with arrests.

On September 21 of that year, coincident with the arrest of Art Smith for a felony burglary, a 1973 pickup truck owned by the respondent Randy Kampsen was legally seized and impounded by the Minnesota Bureau of Criminal Apprehension and the Kandiyohi County Sheriff's Department when the vehicle was found to contain a number of illegal firearms following a stop of Smith. The officers called Gordy's to store and tow the vehicle and furnished Gordy's with an "impoundment slip."

Several days later respondent learned of Smith's arrest and the involvement of his pickup. He claims to thereafter have made some unsuccessful attempts to locate the pickup.[2] From the date of the seizure until December 10, 1985, the vehicle was stored

at Gordy's. By that time, unpaid storage and towing charges had reached $491.50. It appeared to appellants the accumulated charges exceeded the value of the truck, and they decided that unless the charges were paid promptly, the vehicle would have to be sold and the proceeds applied to the towing and storage bill.

Before attempting to sell the pickup, however, Gordy's did attempt to contact Kampsen. A certified letter with a request for return receipt was sent to Kampsen notifying him of the debt and of Gordy's intention to foreclose its lien by sale. The letter was mailed to the address appearing on the "impounding slip" and, as well, on the motor vehicle department records. That letter was returned "moved—left no forward."[3] In January 1986 the truck was sold for "junk." The $200 received from the sale was applied to the towing and storage bill leaving an unpaid balance of $291.50.

By action commenced some 15 months later, Kampsen claims that at some unspecified time between September 21, 1985, but no later than January 1986, when it was sold, Gordy's had converted the Kampsen pickup truck.[4] It is, of course, elementary

issue relative to the propriety of the actions by the deputies for trial. *Id.* at 919–20. Because the county did not seek further review, that claim is not before us.

**2.** Even the limited record in the summary judgment action clearly demonstrates that respondent knew his truck had been seized by sheriff's officers. However, his efforts to locate it were apparently limited to two trips to Willmar to drive around the sheriff's office. He made no attempt to enter the office or to otherwise inquire about the truck. He does claim to have himself or through other members of his family tried to contact the sheriff's office by telephone. However, he refused to produce telephone bills to substantiate the long distance calls. In the light of Kampsen's demonstrated lack of concern for his own vehicle—for example, this action was not commenced for 18 months—it is not difficult to understand why the trial court viewed Kampsen's conversion claim to be meritless, frivolous and asserted in bad faith. However, as we later explain, in our view respondent's right to maintain this conversion action is not foreclosed merely because of his lack of diligence in seeking to locate his vehicle.

**3.** The address on the letter was that of respondent's father. At the time this action was commenced—approximately 15 months later—that was also respondent's address. He claimed that during the fall of 1985 he resided in the metropolitan Twin City area. Otherwise, so far as the record shows, Kampsen had never changed his address on the vehicle's title registration as required by law. *See, e.g.,* Minn.Stat. § 171.11 (1988).

**4.** Respondent Kampsen, in memoranda filed with the trial court and in briefs filed with the court of appeals, has at all times somewhat amorphously claimed a conversion without specifically attempting to categorize what he asserts to be the resultant legal relationship between Gordy's and himself, as owner. Specifically, Kampsen never asserted that the relationship was that of bailment as defined in Minn. Stat. § 514.19(2) (1988). Moreover, as the court of appeals noted, he has cited no statute which describes the obligations of one who seizes or detains personal property in a setting of this nature. Nonetheless, the court of appeals deemed the "key issue" to be either whether Gordy's was a bailee within the definition of Minn.Stat. § 514.19(2) (1988) and therefore whether Randy Kampsen was entitled to the no-

that one may be liable to the owner of personal property for conversion when he or she without justification exercises dominion over the property inconsistent with the owner's rights. *See, e.g., Hildegarde, Inc. v. Wright,* 244 Minn. 410, 70 N.W.2d 257 (1955); *Borg & Powers Furniture Co. v. Reiling,* 213 Minn. 539, 7 N.W.2d 310 (1942). Thus, absent justification, since the seizure, impoundment and retention of respondent's truck in storage were acts inconsistent with rights of its owner, the acts of the officers and of Gordy's constituted a conversion.

However, no one, including the respondent, claims the acts of seizure and the initial impoundment were not justified. All parties concede that the original seizure and retention of the vehicle were authorized by law and justifiable. *See* Minn. Stat. § 626.04 (1988).

The question, then, becomes: when, if ever, did these acts cease to be covered by the mantle of original justification so as to impose liability upon these detainers? The premise which appears to underlie the contention of appellants, as well as the decision of the trial court, is that once the owner learns of the seizure and detention, thereafter, the obligation to timely locate and claim the property rests upon the owner. On the other hand, respondent claims that the justification warranting the seizure and detention of the property expires when the persons holding the property fail to exercise reasonable efforts to notify the owner of the property's location, that they claim a lien for transportation and/or storage, and that failure to redeem the property within a specified reasonable time will result in foreclosure of the lien by sale with proceeds to be applied on the debt. While respondent concedes that no statute exists which specifically affords to him the notice and sale procedure requirements afforded the owners of abandoned motor vehicles under Minn.Stat. § 168B.01–168B.11 (1988), or the rights of notice and sale procedure afforded to a bailor-owner under Minn.Stat. § 514.21 (1988), he asserts, essentially, that

the procedures set forth in those statutes, nonetheless, reflect the public policy of this state that ownership in personal property shall not be terminated without application of certain precepts of fairness inherent in the concepts of common law due process.

At common law, the holder of a possessory lien on personal property, absent special agreement, was limited to detention of the property as security. The holder could not sell the property to satisfy his claim unless he had first reduced it to judgment, which, of course, required the service of notice of some sort upon the owner, and further, unless he had complied with rules or laws governing execution sales. In Minnesota, the common law's requirements relative to creation, extent and foreclosure of possessory liens on personal property were codified in what is now Minn.Stat. § 514.18–514.22 (1988). Perhaps as a "short cut" to the somewhat cumbersome and time consuming requirements inherent in the process of reduction to judgment followed by execution sale, the statute authorizes a foreclosure sale upon nonpayment of the lien without the court supervised formality of the common law, but nonetheless, retains the common law's due process fairness requirements of notification and conduct of sale. *See* Minn.Stat. § 514.21–514.22. It appears to us that the retention of those requirements manifests a legislative determination that an owner's rights in personal property shall not be foreclosed without some sort of prior notification and opportunity to redeem.

That due process concern is reflected by various statutes addressing the general subject matter since territorial days, and has been codified in essentially its present form for more than 80 years. *See* Act of Apr. 19, 1905, ch. 328, § 4, 1905 Minn. Laws 515, 516. Codifications of similar statutes purporting to regulate the termination of an owner's rights in personal property likewise contain comparable due process type provisions. *See, e.g.,* Minn. Stat. § 168B.06 (1988), (abandoned vehicles); *id.,* § 514.29 (shoeing animals); *id.,*

---

tice procedures of Minn.Stat. § 514.21 (1988). We doubt whether there was a bailment as contemplated by Minn.Stat. § 514.19, and,

therefore, as noted hereafter we reach the same ultimate result as the court of appeals, but by following a somewhat different path.

§ 336.7–308 (enforcement of carrier's liens); *id.*, § 336.7–210 (enforcement of warehouse operator's liens). The provisions of these statutes incorporating common law due process concepts is of significant aid to us in resolving the issue in this case. Since time immemorial, in the absence of a statute specifically governing a given issue, common law courts have structured rules to resolve the specific issue before them by analogizing to statutes covering the same general subject matter. *See, e.g.,* Traynor, *Statutes Revolving in Common–Law Orbits,* 17 Cath.U.L.Rev. 401, 405–26 (1968). For a general discussion of the topic, *see* Pound, *Common Law and Legislation,* 21 Harv.L.Rev. 383 (1908); Schaefer, *Precedent and Policy,* 34 U.Chi.L.Rev. 3, 19–22 (1966). Reference to similar statutes addressing methods of procedure to be followed in terminating ownership of personal property sheds significant light upon the issue. By enactment of those statutes, it seems to us the legislature has clearly articulated that the state's public policy insists that an owner's rights in personal property may be terminated by one claiming a possessory lien only if there has been prior compliance with basic common law due process standards of notification.

But what are those basic common law due process requirements? A review of the cases as well as examination of the notification provisions in the various statutes cited in this opinion indicate that, at a minimum, the possessor must take timely steps reasonably designed to furnish notification to the owner of the nature and amount of the possessor's claim, the owner's right to redeem the property being retained as security for the claim, and that failure of the owner to redeem within the allotted time will, at its expiration, result in sale to satisfy the debt. When the possessor's duty is so defined, it clearly appears that, except in those rare circumstances when reasonable minds, as a matter of law, could only conclude the detainer has com-

plied with the duty, the sufficiency of the notification remains for resolution by the factfinder—usually the jury. Evidence of actions relative to that determination include the nature and extent of the efforts of the possessor to locate and provide personal notification to the owner; and, failing in such efforts to provide personal notification, the nature, extent, and reasonableness of the possessor's efforts to provide the owner notification of his rights by publication.[5]

Whether Gordy's converted respondent's pickup truck depends upon whether it was justified, under the circumstances here prevailing, to retain the vehicle as it did and ultimately sell it. That, in turn, pivots on the reasonableness of Gordy's actions relative to attempting to provide respondent notification of retention and sale. This is a fact question for jury resolution. Because the trial court's order granting summary judgment was premised primarily upon placing an obligation on the owner to timely locate and claim the vehicle, the order must be vacated.

We affirm the vacation of the trial court's order by the court of appeals and remand for trial consistent herewith.

---

5. We do not suggest that the actions or inactions of the owner with reference to the property after learning of its seizure by police authorities are not relevant to the inquiry. The reasonableness, for example, in the instant case of Gordy's actions may, in the jury's analysis, depend upon its perception of the reasonableness of Kampsen's efforts vis-a-vis, the location of the vehicle, and whatever effect that might have upon a reasonable person standing in Gordy's position as to the extent and efforts necessary to provide appropriate notification.