Bonnie M. SILBERSTEIN, individually and as Trustee of the Heirs of Delton Silberstein, Jr., Respondent (C7–91–279), Appellant (C2–91–531),

Samuel Silberstein and Rachel Silberstein, minors, appearing by their mother and natural guardian Bonnie M. Silberstein, and Bonnie M. Silberstein, individually, Respondents (C1–91–312), Appellants (C2–91–531),

v.

Randy CORDIE, Appellant (C7–91–279), Respondent (C1–91–312), Defendant (C2–91–531),

Big Stone County, Defendant (C7–91–279), Respondent (C1–91–312, C2–91–531),

State of Minnesota, Defendant (C2–91–531),

Renee Ahles, et al., Defendants (C7–91–279), Appellants (C1–91–312), Respondents (C2–91–531).

Nos. C7–91–279, C1–91–312 and C2–91–531.

Court of Appeals of Minnesota.

Sept. 10, 1991.

Review Granted in Part and Denied in Part Nov. 26, 1991.

Logan N. Foreman III, Stephen S. Eckman, Minneapolis, for Bonnie M. Silberstein.

David C. McLaughlin, Ortonville, for Samuel and Rachel Silberstein.

Mary Elizabeth Pawlenty, Minneapolis, for Randy Cordie.

Bridget M. Ahmann, Diana Young Morrisey, Minneapolis, Robert D. Schreiner, Ortonville, for Big Stone County.

Lisa Marie Elliott, Minneapolis, for Renee Ahles, et al.

Considered and decided by PARKER, P.J., and FORSBERG and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

On May 5, 1984, Randy Cordie killed Delton Silberstein. Three civil actions arose from Silberstein's death. In 1986, Delton Silberstein's wife, Bonnie Silberstein, as trustee for her husband's heirs, commenced a wrongful death action against Big Stone County (Big Stone County File No. C1–84–12066). In January 1988, Bonnie Silberstein, as trustee, commenced a wrongful death action against Randy Cordie (Chippewa County File No. C9–88–284). In May 1990, Bonnie Silberstein, as natural guardian for her two minor children, and individually, commenced an action alleging negligent infliction of emotional distress against Cordie, Cordie's mother and stepfather, Renee and Mark Ahles, and Big Stone County (Chippewa County File No. C5–90–184).

Three separate appeals arose. First, the Ahles appealed the denial of summary judgment on the Silbersteins' negligent failure to control and negligent infliction of emotional distress claims (C1–91–312). This court granted discretionary review. Second, Randy Cordie challenges the trial court's denial of his summary judgment motion on whether the exception to the three-year wrongful death statute of limitation applies (C7–91–279). This question was certified. Third, Bonnie Silberstein, as trustee of her husband's heirs, as guardian for her two minor children, and individually, appeals from the grant of summary judgment to Big Stone County on the duty to control, duty to warn, and negligent infliction of emotional distress claims. She also challenges the grant of summary judgment to the Ahles on the duty to warn claim (C2–91–531). This court consolidated the appeals.

## FACTS

Randy Cordie has suffered from mental illness since the early 1980's when he started having visual and auditory hallucinations about beasts, demons and the devil. From 1980 to 1982 he was hospitalized three times. During these hospitalizations, the doctors diagnosed his condition as schizophrenia and prescribed medications. Cordie, however, did not regularly take the medications.

Cordie's deteriorating condition seriously affected his relationship with Delton Silberstein. The two had known each other while growing up in Ortonville, Minnesota, but did not become friends until the late 1970's. Cordie apparently believed Silberstein was colluding with the devil. In mid-March 1982, shortly after his third hospitalization, Cordie went to Silberstein's apartment and threatened to beat him up if he did not stop trying to kill Cordie's younger brother. Five months later, on August 2, 1982, Cordie went to Silberstein's work place, accused Silberstein of murdering many people, and said he planned to get a gun and kill Silberstein. These irrational accusations were part of Cordie's delusions.

The day after this threat, Cordie's mother, Renee Ahles, petitioned to involuntarily commit her son which was done on August 13, 1982. At the Willmar State Hospital, Cordie was diagnosed as schizophrenic, paranoid type in remission, with alcohol and other mixed substance abuse in remission. He received treatment, including prescribed medications, for about four months, after which he was admitted to a Duluth halfway house where he stayed until his release in late February 1983. Only several weeks after his release, Cordie stopped taking his medications. This was known by Renee Ahles and Joel Churness, Cordie's caseworker in Big Stone County.[1]

---

1. On August 6, 1982, the Big Stone County Family Service Center opened a social services file on Cordie to provide him with adult protection services. Throughout the time Cordie had an open file, the county's social service case plan included getting Cordie to take his medication and encouraging him to use available resources—outpatient or inpatient care—to treat his mental illness.

After his release, Cordie returned to Ortonville, where he lived with his mother and stepfather, Renee and Mark Ahles. In April 1983, Churness and Renee Ahles became concerned about Cordie's renewed delusions and failure to take his medication. Churness contacted Dr. William Hausman, a psychiatrist, who concluded Cordie was a significant risk to himself and others. Dr. Hausman and Renee Ahles convinced Cordie to voluntarily commit himself to the University of Minnesota Hospital.

During Cordie's treatment at the hospital, doctors noted only minimal improvement in his psychotic condition. Nonetheless, Cordie wanted to leave. The hospital staff advised Cordie to stay in the hospital until the psychosis was under better control. His discharge on May 28, 1983 was against medical advice.

After his discharge, Cordie attended several sessions with Dr. Hausman. In September 1983, Hausman reported to the Big Stone County Welfare Board that Cordie was not taking his medication and was possibly still experiencing delusions. He did not conclude whether Cordie was homicidal or suicidal. Cordie missed his October appointment with Dr. Hausman. On October 19, 1983, Churness terminated social services for Cordie because of the missed appointment and his failure to take the prescribed medicine.

Because Cordie failed to improve, the Ahles decided to have Cordie move out of their home in May 1984. They made plans to acquire an apartment for him. The weekend before the planned move, the Ahles travelled to the Twin Cities. They had left a 12 gauge shotgun in their bedroom closet for several years before 1984. Cordie got the gun, went to a beer party, and told his friend Arlan Christopherson, he planned to kill Silberstein that night. In the early morning of May 5, 1984, Cordie left the party and went to Silberstein's home where he lived with his wife and two minor children, ages two and three-and-one-half. Cordie entered the Silberstein house, went to the children's bedroom and ultimately shot Delton Silberstein. Bonnie Silberstein did not see the shooting, but heard the gunshot and her husband fall down and start to moan. Cordie walked down the stairway and shot Silberstein again. Cordie then reentered the children's bedroom where Bonnie and her two children were and spoke irrationally to her for about ten minutes. He then went down the stairs and shot Silberstein three more times at close range.

Cordie was tried by the court. The trial court found the elements of first degree murder were proved beyond a reasonable doubt. In the capacity proceeding, the court found Cordie not guilty by reason of mental illness.

Following Cordie's criminal trial, three civil actions were commenced. On appeal, Renee and Mark Ahles argue the trial court erred by denying summary judgment in their favor on the negligent failure to control and negligent infliction of emotional distress claims. Randy Cordie argues the three-year wrongful death statute of limitations applies in this case. Trustee Bonnie Silberstein contends the trial court erred by granting summary judgment to Big Stone County on the duty to control, duty to warn and negligent infliction of emotional distress claim. She also challenges the grant of summary judgment to the Ahles on the duty to warn claim.

## ISSUES

1. Does the exception to the three-year wrongful death statute of limitations for intentional acts constituting murder, as set forth in Minn.Stat. § 573.02, apply in cases where the defendant has been found not guilty of murder by reason of mental illness?

2. Did the trial court err by denying the Ahles' summary judgment and granting Big Stone County summary judgment on the Silbersteins' failure to control claim?

3. Did the trial court err by granting the Ahles and Big Stone County summary judgment on the Silbersteins' duty to warn claim?

4. Did the trial court err by granting Big Stone County summary judgment and denying the Ahles summary judgment on

the Silbersteins' negligent infliction of emotional distress claim?

## ANALYSIS

In reviewing a grant of summary judgment, this court must determine: (1) whether genuine issues of material fact exist, and (2) whether the trial court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The evidence is viewed in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

### I.

■ Generally a wrongful death action must be commenced within three years of the decedent's death. Minn.Stat. § 573.02 (1984). The Silbersteins' wrongful death action against Cordie was commenced more than three years after Delton Silberstein's death. There is no limitations period, however, for an "intentional act constituting murder." *Id.,* subd. 1. The trial court certified this question:

> Whether the exception to the three-year wrongful death statute of limitations for intentional acts constituting murder, as set out in Minn.Stat. § 573.02, applies in cases where the defendant has been found not guilty of murder by reason of mental illness?

The trial court concluded the exception applies in the case and we agree.

We first conclude Cordie's act was intentional. The trial court properly relied on *State v. Bouwman,* 328 N.W.2d 703 (Minn. 1982) to conclude the exception applies. In *Bouwman* the supreme court said the issues of intent and of mental capacity must be determined separately in the criminal context. *Id.* at 706. It also concluded "physical evidence" is used to establish or challenge the existence of intent; "psychiatric evidence", on the other hand, is not relevant to the question of intent. *Id.* at 705. Based on this distinction, Cordie's mental illness is irrelevant to whether the killing was intentional. It is sufficient the element of intent was proven beyond a reasonable doubt in the first phase of the bifurcated trial to satisfy the "intentional act" requirement of the limitation-period exception.

Our analysis does not end there. Not only must Cordie's act be intentional, it must also "constitute murder." Cordie argues his act did not "constitute murder" because he was found not guilty of murder by reason of mental illness. We disagree. When a statute's language is unambiguous, the letter of the law should not be disregarded to pursue the law's spirit. Minn.Stat. § 645.16 (1990). Words in a statute are construed according to their common and approved usage. Minn.Stat. 645.08(1) (1990). Constitute is defined: "To be the elements or parts of; compose." *The American Heritage Dictionary* 314 (2d ed. 1982); *see also, The Oxford English Dictionary* 876 ("To make up, form, compose; to be the elements or material of which the thing spoken of consists"). Applying this definition, an "intentional act constituting murder" need only possess the elements of murder, that is, "causes the death of a human being with premeditation and with intent to effect the death." *See* Minn.Stat. § 609.185(1) (1990). The trial court, in the intent proceeding, found the elements of murder were proven beyond a reasonable doubt. Accordingly, the limitations period in the wrongful death statute does not bar a claim when the defendant is found not guilty by reason of mental illness.

We acknowledge the defense of mental illness is constitutionally protected. *State v. Hoffman,* 328 N.W.2d 709, 715 (Minn. 1982) (holding defendant has due process right under federal and state constitutions to assert mental illness defense.) In concluding the Silbersteins' claim against Cordie is not time barred, we are not, however, in any way debasing Cordie's mental illness defense. The defense was successfully pleaded during the criminal trial.

### II.

■ Generally, a defendant has no duty to control a third person's conduct to prevent harm to another. *Lundgren v. Fultz,*

354 N.W.2d 25, 27 (Minn.1984) (quoting Restatement (Second) of Torts § 315 (1965)). The duty may arise, however, when (1) a "special relationship" exists between the defendant and the third party and (2) the harm is foreseeable. *Id.* Implicit in the duty to control is the ability to control. *Id.* The existence of a legal duty to control is generally for the court to determine as a matter of law. *See Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985).

### A. Big Stone County

■ The Silbersteins argue the trial court erred by ruling as a matter of law Big Stone County did not have a duty to control Cordie. The county, in turn, contends it had no ability to control Cordie. The Silbersteins advance three means by which the county could have controlled Cordie, each of which we find unpersuasive.

First, the Silbersteins argue the county could have recommitted Cordie after his 1982 release from the hospital. A mentally ill person may be involuntarily committed when he poses a substantial likelihood of harm to himself or others. Minn.Stat. §§ 253B.02, subd. 13, 253B.09, subd. 1 (1984). The record indicates, however, the county reasonably relied upon medical advice to conclude Cordie was not subject to another involuntary commitment. Under these circumstances, the trial court properly held involuntary commitment did not create an ability for the county to control Cordie. *See Leverett v. State,* 61 Ohio App.2d 35, 41, 399 N.E.2d 106, 110 (1978) (psychiatrist has no duty to readmit a patient).

Second, the Silbersteins' contention the county could have controlled Cordie by monitoring his medication lacks merit. The evidence shows the county encouraged Cordie to use available resources—both outpatient and inpatient care—to treat his men-

tal illness. Cordie's unwillingness to regularly take his medication or utilize the county's services cannot be construed after the fact as creating a duty to control. *Cf. Hasenei v. United States,* 541 F.Supp. 999, 1010 (D.Md.1982) (holding no claim against psychiatrist existed because patient could not be forced to take his prescribed medication).

More troublesome is the Silbersteins' third argument that if the county had not closed Cordie's social service file in October 1983, it could have taken action to prevent Silberstein's death.[2] Even if this situation created an ability to control, which we do not decide here, we conclude Cordie's killing of Silberstein was not reasonably foreseeable to the county as a matter of law. Generally, foreseeability is a question of law, but in close cases, it may be an issue for the jury. *Larson,* 373 N.W.2d at 289. Here, the county relied on medical advice that Cordie was not a danger to himself or others, was not aware of new threats against anyone, including Silberstein, and did not have contact with Cordie during the six months before the killing. In view of these circumstances, the county could not have reasonably foreseen the killing of Silberstein.

### B. The Ahles

The Ahles challenge the trial court's denial of summary judgment on the Silbersteins' duty to control claim. The trial court concluded genuine issues of material fact exist whether the Ahles had the ability to control Cordie and whether it was foreseeable Cordie would kill someone with a gun. We agree.

■ One exception to the general rule of no duty to control others is based on a parent/child relationship. Restatement of Torts (Second) § 316(b) (1965). This duty is narrow; at the very most, the duty arises

---

**2.** Testimony at trial indicates there are four reasons to close a file: (1) the client requests closing; (2) the social worker believes the case plan goals are met; (3) the client is not following the objectives; and (4) the Director of Social Services recommends closing the file. In cases where the client has been adjudicated a "vulnerable adult" reasons (1) and (3) do not apply because the client's needs prevail over his or her desires. *See* Minn.Stat. § 626.557. The record in this case, however does not show that Cordie was adjudicated a "vulnerable adult", and therefore the county could properly close his file with either Cordie's consent or his failure to cooperate.

when the parent has both the opportunity and the ability to control the child. *Id.,* comment b.

■ We believe the parent/child exception applies in this case. Cordie lived with his mother and stepfather. Renee Ahles' deposition testimony indicates in the months before the killing she assumed the responsibility of her son's day-to-day care. Moreover, she and her husband knew Cordie was not taking his medication, could not sleep and was nonverbal. Therefore, even though Cordie was 27 years old, his mental condition was like that of a child and, as such, fact issues arise whether the Ahles had the ability to control him.

Significantly, the duty to control, unlike the duty to warn, may arise if there is foreseeable harm to a member of the general public. *See Lundgren,* 354 N.W.2d at 29. The Ahles, it is true, were not aware of a renewed threat by Cordie against Silberstein. They were aware, however, that Cordie's delusional thinking had returned, that he refused to take his medication, and that these combined symptoms had led to a threat against Silberstein two years earlier. Despite this knowledge, the Ahles left a shotgun unlocked in their bedroom. Under these circumstances, a question arises whether the Ahles should have reasonably foreseen possible harm to a member of the general public. Consequently, the trial court did not err by denying the Ahles' summary judgment motion on the duty to control claim.

### III.

■ The Silbersteins' argument that the trial court erred by granting summary judgment to the Ahles and Big Stone County on the failure to warn claim is unpersuasive. Minnesota law is clear. A duty to warn another of potential harm arises, if at all, only when specific threats are made against a specific victim. *Cairl v. State,*

323 N.W.2d 20, 25, n. 7 (Minn.1982) (no duty to warn when pyromaniac youth released from state institution on home leave when no threat to a specific victim). It is undisputed neither the Ahles nor the county were aware of any renewed threat by Cordie against Silberstein after Cordie's release from commitment in August 1982. Accordingly, no duty was imposed upon the Ahles or the county to warn Delton Silberstein of potential harm.

### IV.

■ Minnesota recognizes a cause of action for negligent infliction of emotional distress for

> a person within the zone of danger of physical impact who reasonably fears for his or her own safety and who subsequently suffers severe emotional distress with resultant physical injury

*Stadler v. Cross,* 295 N.W.2d 552, 553 (Minn.1980). *Accord Langeland v. Farmers State Bank of Trimont,* 319 N.W.2d 26, 32 (Minn.1982) (no cause of action for negligent infliction of emotional distress absent either physical injury or physical danger to plaintiff).

#### A. The Ahles

■ The Ahles argue the trial court erred by denying their motion for summary judgment on the Silbersteins' negligent infliction of emotional distress claim. We disagree. First, Bonnie Silberstein and her two minor children were within the physical zone of danger. Though Bonnie and her children did not see the shooting, they heard the five gunshots. Moreover, during the shooting spree, Cordie, armed with the shotgun, twice entered the bedroom where Bonnie and the children were. While Cordie was in the bedroom, Bonnie testified she was "filled with terror" personally and feared for the safety of her children.[3] Under these circumstances, questions of fact

---

**3.** Cordie's irrational conduct plainly extended the contours of the zone of danger to include the children's bedroom. During the gruesome events, Cordie told Bonnie Silberstein that her husband had killed thirty people; he also quoted scripture and tossed a Bible on her child's bed; and he said he must cut out Delton's liver to prove Delton was a woman disguised as a man. Further, Cordie told Bonnie not to be "grossed out" by the brains or "guts hanging out," that the blood was not real, that Delton would be on the street tommorrow in disguise, and that he would have to shoot him again.

exist whether Bonnie and her children reasonably feared for their safety.

Second, questions of fact exist whether the Silbersteins exhibited sufficient manifestations of physical injury. The physical manifestations test is designed to assure the genuineness of the emotional distress. *Leaon v. Washington County*, 397 N.W.2d 867, 875 (Minn.1986). After her husband's killing, Bonnie Silberstein experienced insomnia, loss of appetite, headaches and muscle tension for several months. Presently, she still is fearful about being alone and loud noises elevate her pulse and fill her with a "sense of dread." After the incident Bonnie's daughter required medical treatment for abdominal pain and constipation, started biting her nails and developed highly sensitive skin. Bonnie's son experienced blurred vision, dizziness and stomach problems. He also has become afraid of the dark. These symptoms plainly raise fact issues as to the manifestation of physical injury. *See Quill v. Trans World Airlines*, 361 N.W.2d 438, 443 (Minn.App.1985), *pet. for rev. denied* (Minn. April 18, 1985) (relatively minor symptoms—sweaty hands, elevated blood pressure, and adrenaline surges—constitute sufficient physical symptoms).

### B. Big Stone County

Because we hold Big Stone County is not liable as a matter of law for Silberstein's death, the trial court correctly granted summary judgment to the county on the negligent infliction of emotional distress claim.

### DECISION

We conclude the exception to the three-year wrongful death statute of limitations for intentional acts constituting murder applies to the Silberstein's claim against Randy Cordie. The trial court did not err by granting summary judgment to Big Stone County on all claims. Finally, the trial court did not err by granting the Ahles summary judgment on the duty to warn claim, and denying them summary judg-ment on the duty to control and negligent infliction of emotional distress claims.

Affirmed.